UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRAINBUILDERS LLC, and H and D, by their Attorney-in-Fact, ROCHEL SOROTZKIN, <br><br> Plaintiffs, <br><br> v. <br><br> EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED, THE CITY OF NEW YORK, NEW YORK CITY OFFICE OF LABOR RELATIONS, and NEW YORK CITY DEPARTMENT OF EDUCATION, <br><br> Defendants. | Civil Action No. 20-12703 (FLW)(TJB) <br><br> **OPINION** |

**WOLFSON, United States Chief District Judge**:

Plaintiff Brainbuilders LLC ("Plaintiff"), a therapeutic intervention agency that provides services to children with autism spectrum disorders, initiated the instant action against defendants EmblemHealth, Inc., Group Health Incorporated (collectively, "GHI"), the City of New York, the New York City Office of Labor Relations ("OLR"), and the New York City Department of Education ("DOE") (the "New York Defendants") (New York Defendants together with GHI, "Defendants"), to recover payment for services rendered to a minor child pursuant to a GHI health plan. GHI and the New York Defendants filed separate motions to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), or, in the alternative, to transfer the case to the United States District Court for the Southern District of New York. For the following reasons, this Court lacks personal jurisdiction over the New York Defendants and this matter is transferred to the United States District Court for the Southern District of New York, in lieu of dismissal, pursuant to 28 U.S.C. §1631 and §1404(a).

1

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In addressing Defendants' Motions to Dismiss, this Court must accept the allegations from Plaintiff's Complaint as true. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Thus, the facts recited below are taken from Plaintiff's Amended Complaint ("Am. Compl.") and do not represent this Court's factual findings.

Brainbuilders is located in New Jersey and it provides therapeutic services such as applied behavioral analysis ("ABA"), physical therapy, occupational therapy, and speech therapy, to children with autism spectrum related disorders ("ASDs"). ECF No. 14, Am. Compl. ¶1. ABA is purportedly "the single most effective and widely practiced treatment for individuals diagnosed with an ASD." *Id.* at ¶17.

Brainbuilders initiated the instant action to recover payment for services it allegedly rendered to a patient, a fourteen-year-old child (the "Child"), who has been diagnosed with an autism spectrum disorder. *Id.* at ¶¶2, 9.[1] In May 2017, Brainbuilders began providing ABA services to the Child, who was diagnosed with an ASD in 2009, and continues to do so to this day. *Id.* at ¶9. The Child's mother is employed by the DOE and receives insurance coverage through her employer, as does the Child, as her dependent. *Id.* at ¶¶10, 11, 14. According to the New York Defendants, and not disputed by Plainitff, the DOE and the City of New York are New York municipal corporations. *See* ECF No. 13-1, Declaration of Judy E. Nathan, dated October 20, 2020 ("Nathan Decl."), ¶3 ("The City is a municipal corporation organized pursuant to the laws of

---

[1]     Plaintiff's Complaint refers to the child and mother involved on whose behalf Brainbuilders initiated this action as "D" and "H." This Opinion refers to them as the Mother and the Child.

the State of New York"); ECF No. 13-2, Declaration of Dean S. Weltman, dated October 20, 2020 ("Weltman Decl.") ¶3 ("DOE, also known as the Board of Education of the City of New York, is a municipal corporation, organized and existing under Article 52-A of the New York Education Law, with its principal place of business located in the City, County, and State of New York." ). The OLR is a New York City agency which represents the Mayor of the City of the New York in labor relations between New York City and labor unions representing New York City employees. Weltman Decl. ¶3. It is also the agency which administers employee health benefits. *Id*.

The DOE offers a variety of plans, and the Mother chose, and is insured by, the GHI Comprehensive Benefit Plan (the "Plan"), which is provided by defendants EmblemHealth, Inc. and Group Health Incorporated. *Id*. at ¶¶3, 4, 14. The Plan includes out-of-network services, and Brainbuilders is an out-of-network provider under the Plan. *Id*. at ¶16.

The Mother uses the Plan to pay for the ABA health services provided by Brainbuilders. However, Plaintiff alleges that "GHI has been paying Brainbuilders approximately 6% of its billed amount for D's ABA. Six-percent is well below Brainbuilders' cost, forcing it to 'balance bill' [the Child's] caregivers for the rest." *Id*. at ¶21. Plaintiff alleges that "[i]n the State of New York, GHI, like all insurance companies, is required to provide coverage for the screening, diagnosis, and treatment of ASDs, including, but not limited to, ABA," and that the Plan purportedly includes coverage for ABA. *Id*. at ¶18-19. But, in Plaintiff's view, the Plan's low reimbursement rate "fails to cover the ABA in any meaningful sense," in violation of New York State law. *Id.* at ¶21.

On behalf of herself and the Child, the Mother executed an assignment of benefits and an assignment of the right to pursue legal and administrative remedies under the Plan, appointing

3

Rochel Sorotzkin, as their attorney-in-fact, with authority to pursue all legal and administrative remedies under their health insurance plan. *Id*. at ¶1-2.[2]

Dissatisfied with the reimbursement rate, Brainbuilders, as Plaintiff's assignee, unsuccessfully initiated an internal appeal at GHI, according to the Plan's internal appeal procedures. *Id*. at ¶28. Thereafter, "a Notice of Claim was served on behalf of [the Mother] upon NYC Defendants in accordance with New York's General Municipal Law. More than thirty-days has elapsed since such service, and NYC Defendants have refused to pay said claim or adjust the same." *Id*. at ¶30.

Thereafter, Plaintiff initiated the instant action asserting breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraud, civil conspiracy, civil aiding and abetting claims, and violations of the New York Prompt Pay Law, New York Consumer Protection Law, the New York Autism mandate, and seeking a declaratory judgment. Plaintiff initially filed this action in New Jersey state court, and it was removed to this Court in September 2020. Then, the New York Defendants and GHI filed their respective motions to dismiss the Complaint. *See* ECF. Nos. 11, 13. On November 9, 2020, Plaintiffs filed an Amended Complaint. *See* ECF No. 16. Thereafter, the Court granted Defendants' joint request to deem the pending motions to dismiss to be directed against Plaintiffs' Amended Complaint. *See* ECF No. 18.

## II. **STANDARD OF REVIEW**

---

[2] The Power of Attorney provides that the Mother, appoints Rachel Sorotzkin as her "true and lawful agent (hereinafter my "Agent"), for all purposes related to health insurance, health benefits and/or insurance reimbursement to which I and/or my dependents may be or may become entitled with regard to services rendered to me and/or my dependents by BRAINBUILDERS LLC, and in connection therewith to perform such acts for me and on my behalf as my Agent, in my Agent's absolute discretion, deems advisable, as fully and with the same validity as I could if I did so personally in any jurisdiction in which my Agent shall act." *See* ECF No. 23-1, Pl. Opp to Emblem Br., Reply Declaration of Alvin C. Lin, Ex. A, "Durable Power of Attorney for Health Insurance and Benefit Claims" dated November 13, 2019.

4

### a. Federal Rule of Civil Procedure 12(b)(2)

To withstand a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendant by a preponderance of the evidence. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); s*ee Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (noting that the plaintiff "bears the burden to prove, by a preponderance of the evidence, that personal jurisdiction is proper.") (internal quotation marks and citation omitted). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." M*iller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Still, to meet its burden, the plaintiff must establish "jurisdictional facts through sworn affidavits or other competent evidence .... [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Id*. at 101 (citation and internal quotation marks omitted). If the plaintiff meets this burden, "the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable." *Display Works, LLC v. Bartley*, 182 F.Supp.3d 166, 172 (D.N.J. 2016); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe*, 566 F.3d at 330; *see* Fed. R. Civ. P. 4(e). In assessing whether personal jurisdiction exists, the Court's analysis is twofold: "[t]he court must first determine whether the relevant state long-arm statute permits the

exercise of jurisdiction; if so, the court must then satisfy itself that the exercise of jurisdiction comports with due process." *Display Works*, 182 F. Supp. at 172. "Since New Jersey's long-arm statute allows 'the exercise of personal jurisdiction to the fullest limits of due process,' [the Court must] 'look to federal law for the interpretation of the limits on in personam jurisdiction.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)).

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). In *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310 (1945), the Supreme Court held that a state may authorize its courts to exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id*. at 316 (citation omitted). "Following *International Shoe*, 'the relationship among the defendant, the forum, and the litigation ... became the central concern of the inquiry into personal jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Accordingly, courts recognize two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol–Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).

b. **Federal Rule of Civil Procedure 12(b)(6)**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v.*

*UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the Court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of trust. *Id*. Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III. ANALYSIS

#### a. The New York Defendants' Motion to Dismiss

General jurisdiction refers to a court's power to "hear any and all claims" against a defendant. *Goodyear*, 564 U.S. at 919. General jurisdiction exists over a corporation where its

7

"affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id*. (internal quotation marks and citation omitted); *Daimler*, 571 U.S. at 138. In *Daimler*, the Supreme Court explained that a corporation is "at home" in its place of "incorporation and principal place of business," and thus, those locations serve as the paradigm bases for general jurisdiction. 571 U.S. at 137. As a result, "it is 'incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'" *Malik*, 710 F. App'x. at 564 (citation omitted).

In the absence of general jurisdiction, a plaintiff may rely on specific jurisdiction where the cause of action is related to, or arises out of, the defendant's contacts with the forum. *IMO Indus., Inc.*, 155 F.3d at 259. In that connection, establishing specific jurisdiction under the Due Process Clause requires satisfaction of a three-part test. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (internal quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe*, 326 U.S. at 320).

New York Defendants move to dismiss the claims against them asserting that they are not subject to personal jurisdiction in New Jersey.[3] New York Defendants Br. at 6-13. They explain

---

[3] The New York Defendants contend that OLR must be dismissed because under New York law, New York city agencies, such as the OLR, are "non-suable" entities. ECF No. 13-6, New York Defendants Br. at 5-6. However, because this Court lacks personal jurisdiction over the New York Defendants, including the OLR, the Court does not reach any of Defendants' arguments regarding dismissal for failure to state a claim.

8

that they are New York entities, and primarily operate in that state. Accordingly, New York Defendants contend that they are not subject to general jurisdiction in New Jersey. *Id*. Similarly, New York Defendants argue that they are not subject to specific personal jurisdiction in New Jersey, contending that they did not purposely direct their actions at New Jersey such that it would give rise to personal jurisdiction in this State. *Id*. New York Defendants assert that they do not target their recruitment efforts toward any state other than New York, nor do they solicit New Jersey residents as potential employees. *Id*. at 10-13. New York Defendants emphasize that their only connection to New Jersey is by virtue of the fact that the Mother "took her son to Brainbuilders, a New Jersey healthcare provider, and used health insurance obtained in connection with her DOE employment to pay for Brainbuilders's fees," neither of which was an action directed by New York Defendants. *Id*. at 11-13.

In response, Plaintiff does not address New York Defendants' arguments regarding general jurisdiction, but argues that there is specific jurisdiction over those defendants in New Jersey.[4] Pl. Br. at 6-10. Plaintiff maintains that "there is no question that [the Mother] resides in this State, and that the matter arises from a longstanding contractual relationship between [the Mother] and [New York] Defendant[s]." *Id*. at 7. Further, Plaintiff submits that New York Defendants should have been aware that the Mother was a New Jersey resident because, according to the DOE's data,

---

[4] Nor do I find that there is any basis for general personal jurisdiction over these defendants. The New York Defendants are all state entities which have their principal place of business in New York, New York, and thus, are only subject to general personal jurisdiction in the state of New York. *See* Weltman Decl., ¶3; Nathan Decl., ¶¶3-4; *see Daimler AG*, 571 U.S. at 137 (holding that, for a corporation, the "paradig[m] ... bases for general jurisdiction" are its place of incorporation and principal place of business). Plaintiff has not alleged facts demonstrating that this is the type of exceptional case that may warrant the exercise of general jurisdiction outside of the New York Defendants' home state. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) ("[I]t is incredibly difficult to establish general jurisdiction over a corporation in a forum other than the place of incorporation or principal place of business.")

9

"almost half of Defendant's teachers in the Bronx, or 7,253 out of 15,766, reside outside the five boroughs of the City," and given New York City's proximity to New Jersey, "it is safe to assume that a large percentage of those teachers reside in New Jersey." *Id*. at 8-9. Plaintiff also notes that teachers, unlike other New York city employees, are not subject to a residency requirement, and "[New York] Defendant[s'] contract with its teachers was negotiated and signed by the teachers' unions on behalf of all its teachers. . . .As such, when signing the agreement, [New York] Defendant[s] had to have known that [they] may be haled into court by one or more of the many New Jersey-residing teachers that are parties to the agreement." *Id*. at 10.

As explained, *supra*, the first factor of the specific jurisdiction test requires a showing that the defendant "'purposefully directed [its] activities' at the forum." *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 472). One way to do so is by demonstrating that the defendant incurred contractual obligations with an out-of-state entity or person, and created "continuing relationships and obligations with citizens of another state." *Burger King*, 471 U.S. at 473. However, the act of entering into a contract with a person or entity in a "foreign jurisdiction, without more, cannot serve as a basis for asserting personal jurisdiction over a nonresident defendant." *Machulsky v. Hall*, 210 F. Supp. 2d 531, 539 (D.N.J. 2002); *see also G&C Fab-Con, LLC, v. M&S Civil Consultants, Inc.*, No. 20-08425, 2021 WL 268177, at *5 (D.N.J. Jan. 27, 2021) ("The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." (internal quotation marks and citations omitted)). Instead, "prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." *Burger King*, 471 U.S. at 479; *see also Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) ("[i]n determining

jurisdiction over a breach of contract claim, [courts] must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing.").

Here, Plaintiff's arguments in favor of specific jurisdiction are largely premised on the fact that the Mother, who is employed by the DOE, resides in New Jersey. Notably, the parties have not addressed all of the facts which are relevant to assessing whether the contractual relationship, here, would give rise to personal jurisdiction over a non-resident defendant, such as where contract negotiations occurred. However, based on the facts as pled in Plaintiff's Amended Complaint, the state of New Jersey is largely incidental to the parties' contractual relationship. While the DOE, the Mother's employer, was likely aware that the Mother resided in New Jersey at the time it hired her that, alone, is insufficient to give rise to specific personal jurisdiction. *Croat v. Mission Fine Wines, Inc.*, No. 19-17786, 2020 U.S. Dist. LEXIS 70145, at *11 (D.N.J. Apr. 21, 2020) (finding that an employment relationship between plaintiff and non-resident defendant was insufficient to confer personal jurisdiction); *Stevens v. Welch*, No. 10-3928, 2011 U.S. Dist. LEXIS 12142, at *7 (D.N.J. Feb. 7, 2011) ("Plaintiff chose to live in New Jersey and decided to use his home as a base of operations is a mere fortuity. . . and such fortuitousness cannot be the basis of personal jurisdiction without raising concerns of due process."). The location of the contracting parties is not dispositive for purposes of specific jurisdiction; rather, the Court looks to the nature and extent of the defendant's contacts with the forum, and whether the contract contemplated future consequences in the forum. *Burger King*, 471 U.S. at 479; *Remick*, 238 F.3d at 256.

Plaintiff has not identified any specific contacts New York Defendants had with Plaintiff in New Jersey. None of the New York Defendants have offices or facilities in New Jersey. Although Plaintiff alleges that the DOE's website is accessible to New Jersey residents and that

the DOE should have been aware that New Jersey residents might apply for employment due to the states' close proximity to each other, the Complaint does not allege that the DOE solicited the Mother in New Jersey, or visited New Jersey in order to hire the Mother, such that it can be said that the DOE, or the other New York Defendants, "purposefully directed [its] activities" at the forum. *Burger King Corp.,* 471 U.S. at 472; *see also Erwin v. Waller Cap. Partners, LLC*, No. 10-CV-03283 AET, 2010 WL 4053553, at *5 (D.N.J. Oct. 14, 2010) (finding that plaintiff did not allege that "Defendant reached out to New Jersey by conducting significant recruiting efforts in the state, or even that Plaintiff was himself recruited and hired out of New Jersey. Neither hiring nor entering into a compensation agreement with an employee who maintains a permanent residence in another state qualifies as purposeful direction on the part of the Defendants, particularly when the initial recruiting and later agreement negotiations appear to have taken place outside of the forum state."). Indeed, the Mother was hired to work in a New York city public school and worked in various schools throughout New York City during her entire tenure with the DOE. Nathan Decl., ¶8. Giving Plaintiff the benefit of all reasonable inferences from the alleged facts, there is no indication that the parties contemplated any future consequences of the employment contract in New Jersey or that the New York Defendants could have anticipated behind haled into New Jersey. Accordingly, I find that Plaintiff has not satisfied its burden of establishing minimum contacts between the New York Defendants and New Jersey.

After finding a lack of personal jurisdiction, the Court could dismiss under Fed. R. Civ. P. 12(b)(2); however, the Third Circuit has stated that "a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020). Under 28 U.S.C. § 1631, the Court "shall, if it is in the interest of justice, transfer such action ... to any other such court ... in which the action ... could have been brought."

"Transfer is generally more in the interest of justice than dismissal." *Boily v. Walt Disney World Co.*, No. 08-04967, 2009 WL 1228463, at *8 (D.N.J. May 1, 2009) (citation omitted). Dismissal is a "harsh remedy" whereas transfer is "the preferred remedy." *Konica Minolta, Inc. v. ICR Co.*, No. 15-01446, 2015 WL 9308252, at *5 (D.N.J. Dec. 22, 2015) (quoting *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp .2d 317, 319 (D.N.J. 1998)).

The DOE and the City of New York are New York City entities, and in the case of the OLR, a city agency, with their principal places of business in New York City, as such, they are subject to general personal jurisdiction in New York. *See* Weltman Decl., ¶3; Nathan Decl., ¶¶3-4. Accordingly, this action could have been brought in the Southern District of New York, the federal district court which encompasses New York City. *See* 28 U.S.C. § 1391(b)(2-3) (explaining that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or ... if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action"). Accordingly, I find that transferring Plaintiff's claims against the New York Defendants to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1631 is appropriate.

### b. GHI's Motion to Dismiss

GHI moves to dismiss the claims against it asserting both that Plaintiff lacks standing to bring the instant claims, and for failure to state a claim. *See generally*, ECF No. 11-5, GHI Br. GHI also requests "that if the Court transfers the claims against the New York City Defendants, that it transfer the entire case. Because the GHI Defendants are headquartered in New York, they do not object to jurisdiction in the SDNY." GHI Br., at 24. In GHI's view, for "reasons of judicial

efficiency, all of the claims against all of the defendants should be tried in a single action in a single court, and not separated into multiple, simultaneous proceedings." *Id*. at 25.

Although GHI does not challenge this Court's exercise of personal jurisdiction over it, I find that transfer of the claims against GHI, rather than severance, is appropriate. Further, a transfer is also appropriate after weighing both the public and private factors which a court considers when transferring a matter pursuant to Section 1404. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995). Indeed, the Court must analyze a non-exhaustive list of private and public factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* at 879. Private interests include the plaintiff's choice of venue; the defendants' preference; where the claim arose; convenience of the witnesses; and the extent to which records or other documentary evidence would be available for production. *Id*. Public interests include the enforceability of any judgment; practical considerations that could make the trial easy, expeditious or inexpensive; relative administrative difficulty resulting from court congestion; local interest in deciding the controversy; relative importance of public policies; and familiarity of the trial judge with the applicable state law in diversity cases. *Id*. at 879–80. The district court "is vested with a large discretion" to determine when transfer should be ordered "for the convenience of parties and witnesses, in the interest of justice." *Solomon v. Continental Amer. Life Ins.*, 472 F.2d 1043, 1045 (3d Cir. 1973) (internal quotations and citations omitted).

I find that transfer of this case to the Southern District of New York is appropriate, because the claims are governed by New York law, a portion of the events giving rise to Plaintiff's claims occurred in New York, and the Southern District of New York is the only forum where all of Plaintiff's claims against all Defendants can proceed together. Several factors weigh in favor of

retaining the claims against GHI in this district, including plaintiff's forum preference,[5] and where the ABA services at issue were rendered. However, competing considerations, such as the fact that Plaintiff's claims involve the interpretation of New York Law, the regulation of a New York health insurance provider, and an employment relationship arising out of New York, support transfer to New York. Other factors, such as the convenience of the parties and witnesses, the location of books and records, the enforceability of judgments, and the states' interests are largely neutral. Both transfer and retaining the lawsuit will require one side to travel to another state to litigate the lawsuit, and both New York and New Jersey have different state interests at issue. Ultimately, I find that the interest of judicial economy would be better served by litigating all of Plaintiff's claims against Defendants, which are intertwined, and all involve interpretations of the Plan and New York insurance law, in one forum, and that fact tips the scales in favor of transfer. In that connection, the Third Circuit has cautioned against granting severance "if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Cottman Transmission Sys. v. Martino,* 36 F.3d 291, 296 (3d Cir. 1994); *see also Dao v. Knightsbridge Int'l Reinsurance Corp.,* 15 F. Supp. 2d 567, 576 (D.N.J. 1998) ("The sever and transfer procedure is discretionary, but is not likely to be appropriate where the partial transfer would require the same issues to be litigated in two places.").

Instead of Plaintiff litigating this lawsuit piecemeal in two separate forums, I exercise my discretion to transfer the entire matter to the Southern District of New York, where there is jurisdiction over all Defendants, without ruling on GHI's motion to dismiss. GHI may renew its

---

[5] However, I note that although Plaintiff chose to file suit in New Jersey, and plainly prefers to litigate in this forum, it did not take a position on the New York Defendant's request to transfer, or otherwise argue that transferring this matter would not be appropriate under the *Jumara* factors.

motion to dismiss in the transferee court. Accordingly, Plaintiff's claims against GHI are transferred to the Southern District of New York pursuant to 28 USC §1404(a).

## IV. CONCLUSION

For the reasons set forth above, the New York Defendants' Motion to dismiss for lack of personal jurisdiction [ECF No. 13] is **GRANTED** and this case is transferred to the United States District Court for the Southern District of New York. GHI's Motion to Dismiss [ECF No. 11], pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED** without prejudice, with the right to refile such motion in the transferee court.


Dated: May 21, 2020                                           s/ Freda L. Wolfson

                                                                              Hon. Freda L. Wolfson
                                                                              U.S. Chief District Judge