UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRAINBUILDERS LLC and H and D, by
their Attorney-in-Fact, Rochel Sorotzkin,

                              Plaintiffs,

                    -v.-

EMBLEMHEALTH, INC., GROUP HEALTH
INCORPORATED, THE CITY OF NEW
YORK, NEW YORK CITY OFFICE OF
LABOR RELATIONS, and NEW YORK CITY
DEPARTMENT OF EDUCATION,

                              Defendants.

---

21 Civ. 4627 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Brainbuilders LLC ("Brainbuilders") and H, on behalf of herself and her minor child, D (with H, the "Members"), by the Members' attorney-in-fact Rochel Sorotzkin (together, "Plaintiffs") bring this action against EmblemHealth, Inc. ("EmblemHealth"), Group Health Incorporated ("GHI," and together with EmblemHealth, the "GHI Defendants"), the City of New York (the "City"), the New York City Office of Labor Relations ("OLR"), and the New York City Department of Education ("DOE," and together with the City and OLR, the "City Defendants"), alleging claims against all Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraud, civil conspiracy, and civil aiding and abetting; and against the GHI Defendants for violations of various federal and state laws. The GHI Defendants now move for dismissal of Plaintiffs' Second Amended Complaint (the "SAC") for lack of standing and for failure to state a claim. The

City Defendants also move for dismissal on the grounds that (i) OLR is a non-suable entity; (ii) Plaintiffs failed to comply with various statutory prerequisites to suing DOE; (iii) Plaintiffs' tort claims against the City Defendants are untimely; and (iv) Plaintiffs' remaining claims fail to state claims upon which relief can be granted.  For the reasons set forth in the remainder of this Opinion, the Court grants both motions to dismiss.

## BACKGROUND[1]

### A.     Factual Background

Brainbuilders, a New Jersey limited liability company, describes itself as a therapeutic intervention agency that provides services to children with

---

[1]     This Opinion draws its facts from the Second Amended Complaint ("SAC" (Dkt. #34)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion. On a motion to dismiss, a court may consider any statements or documents incorporated by reference in the complaint, documents that are "integral" to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  A document is integral to the complaint "where the complaint relies heavily upon its terms and effect."  *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153); *accord United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

For ease of reference, the Court refers to the GHI Defendants' memorandum of law in support of their motion to dismiss as "GHI Br." (Dkt. #50); to the City Defendants' memorandum of law in support of their motion to dismiss as "City Br." (Dkt. #46-5); to Plaintiffs' consolidated brief in opposition to Defendants' motions to dismiss as "Pl. Opp." (Dkt. #51); to the GHI Defendants' reply brief as "GHI Reply" (Dkt. #53); and to the City Defendants' reply brief as "City Reply" (Dkt. #52).

The Court also refers to the Declaration of Scott P. Bridge in support of the City Defendants' motion to dismiss ("Bridge Decl." (Dkt. #46-1)) and the exhibits attached thereto, including H's June 19, 2020 notice of claim (Ex. B) and GHI's denial of appeal (Ex. C); the Declaration of Luz Campos in support of the GHI Defendants' motion to dismiss ("Campos Decl." (Dkt. #48)) and the exhibits attached thereto, including the GHI Comprehensive Benefits Plan (the "Plan" (Ex. B)); the Declaration of Howard S. Wolfson in support of the GHI Defendants' motion to dismiss ("Wolfson Decl." (Dkt. #49)) and the exhibits attached thereto, including the Power of Attorney granted by H to Sorotzkin (Ex. A); and the Declaration of Yaakov Pollak in opposition to Defendants' motion to dismiss ("Pollak Decl." (Dkt. #51-1)) and the exhibits attached thereto, including another copy of the Plan (Ex. A).

autism-spectrum-related disorders, including applied behavioral analysis ("ABA"), physical therapy, occupational therapy, and speech therapy.  (SAC ¶ 1).  GHI and its parent company, EmblemHealth, are each New York corporations with their principal place of business in New York City.  (*Id.* at ¶¶ 3-4).  D is a fourteen-year-old adolescent who has been diagnosed with autism spectrum disorder.  (*Id.* at ¶ 9).  He has been treated by Brainbuilders from May 2017 to the present.  (*Id.*).  H, D's mother, is employed by DOE.  (*Id.* at ¶ 10).

Pursuant to an agreement between DOE and the United Federation of Teachers ("UFT"), of which H is a member, DOE committed "to arrange for, and make available to each day school teacher, a choice of health and hospital insurance coverage from among designated plans[.]"  (SAC ¶ 11).  In line with this commitment, DOE employees, like all City employees, are offered a choice of healthcare plans.  (*Id.* at ¶ 13).  H selected the GHI Comprehensive Benefits Plan (the "Plan"), a policy created by GHI and the City Defendants for City employees, and under which D is covered as a qualified dependent.  (*Id.* at ¶ 14).

OLR is a subdivision of the City that, among other things, administers the New York City Health Benefits Program, of which the Plan is a part.  (SAC ¶ 6).  The Plan provides coverage for out-of-network services.  (*Id.* at ¶ 16). Premiums for policies that cover out-of-network services are typically substantially higher than premiums for policies that only cover in-network services.  (*Id.* at ¶ 15).

In New York State, all health insurance companies are required to provide coverage for the screening, diagnosis, and treatment of autism spectrum disorder.  (SAC ¶ 18 (citing N.Y. Ins. Law § 3221(l)(17)(A))).  Indeed, according to Plaintiffs, a rider to the Plan's Certificate of Insurance confirms that the Plan includes coverage for ABA.  (*Id.* at ¶ 19).  Per the Plan documents, the amounts that GHI will reimburse for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York."  (*Id.* at ¶ 23).  Pursuant to a 2014 agreement with the Attorney General of the State of New York, GHI committed to "create a website available to NYC employees and retirees that provides information on how much GHI will reimburse GHI Plan members for particular services obtained from out-of-network providers."  (*Id.* at ¶ 24 (quoting *In the Matter of Group Health Incorporated,*  Att'y Gen. of the State of N.Y., Assurance No.: 14-181 (available at https://ag.ny.gov/pdfs/AG-GHI_Assurance_No14-181_Fully_Executed.pdf))).  In partial compliance with that agreement, GHI created a website for its members to seek information on its reimbursement amounts.  (*Id.* at ¶ 25).  However, there is no reimbursement information available on the website for the Current Procedural Terminology ("CPT") or Healthcare Common Procedure Coding System ("HCPCS") codes related to ABA.  (*Id.*).

D was diagnosed with autism spectrum disorder in 2009, and since 2017, he has been receiving ABA from Brainbuilders.  (SAC ¶ 21).  According to Plaintiffs, GHI has consistently paid Brainbuilders approximately six percent of the amount Brainbuilders bills for D's ABA, with the exception of a "short

period" in the beginning of 2019, during which time GHI paid approximately 60% of the billed amounts.  (*Id.* at ¶ 22; Bridge Decl., Ex. B).  As a result, Brainbuilders is forced to bill D's caregivers for the remaining balance.  (SAC ¶ 22).  Plaintiffs have repeatedly appealed GHI's reimbursement determinations in compliance with the Plan's internal appeal procedures, but GHI has ignored many of their appeals.  (*Id.* at ¶ 29).

The SAC states that H, on behalf of herself and on behalf of D, executed an assignment of benefits and an assignment of the right to pursue legal and administrative remedies under the Plan for the benefit of Brainbuilders.  (SAC ¶ 1).  The SAC also states that H appointed Rochel Sorotzkin as attorney-in-fact for H and D, with authority to pursue all legal and administrative remedies under the Plan.  (*Id.* at ¶ 2).

## B.    Procedural Background

On August 18, 2020, Plaintiffs filed an action against Defendants in the Superior Court of the State of New Jersey, Law Division, Monmouth County, captioned *Brainbuilders LLC, and H and D, by their Attorney-in-Fact, Brainbuilders LLC* v. *EmblemHealth, Inc., Group Health Incorporated, The City of New York, New York City Office of Labor Relations and New York City Department of Education*, Docket No. MON-L-002594-20.  (Dkt. #1, Ex. 1).  On September 15, 2020, Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, and the matter was removed to the United States District Court for the District of New Jersey, where it was assigned to Chief Judge Freda L. Wolfson and Magistrate Judge Tonianne J. Bongiovanni.

(Dkt. #1, Ex. 2; Minute Entry for September 15, 2020).  Magistrate Judge
Bongiovanni scheduled an initial pretrial conference for October 20, 2020, and
granted Defendants an extension to October 21, 2020, to respond to Plaintiffs'
Complaint.  (Dkt. #5, 7).

In October of 2020, the GHI Defendants and the City Defendants filed
separate motions to dismiss the Complaint pursuant to Federal Rules of Civil
Procedure 12(b)(2) and 12(b)(6), or, in the alternative, to transfer the case to the
United States District Court for the Southern District of New York.  (Dkt. #11
(GHI Defendants' motion to dismiss, filed October 19, 2020), 13 (City
Defendants' motion to dismiss, filed October 21, 2020)).  On November 9, 2020,
Plaintiffs filed an amended complaint.  (Dkt. #16).  On November 18, 2020,
Alvin C. Lin, counsel for the GHI Defendants, filed a letter on behalf of all
Defendants, asking the court to deem the pending motions to dismiss to be
directed against Plaintiffs' Amended Complaint and to maintain the existing
briefing schedule.  (Dkt. #17).  The court granted Defendants' request the
following day.  (Dkt. #18).  Plaintiffs filed their opposition brief on
December 10, 2020, and Defendants filed their reply brief on January 12,
2021.  (Dkt. #22, 24).  The GHI Defendants filed a notice of supplemental
authority on February 25, 2021.  (Dkt. #25).  On May 21, 2021, the court
issued an Opinion and Order (i) granting the City Defendants' motion to
dismiss for lack of personal jurisdiction, (ii) denying the GHI Defendants'
motion to dismiss without prejudice, and (iii) transferring the matter to the
Southern District of New York.  (Dkt. #27).

6

The matter was transferred to this District on May 24, 2021, and thereafter was assigned to the undersigned.  On June 4, 2021, the GHI Defendants filed a pre-motion letter seeking a conference to discuss the anticipated renewal of their motion to dismiss.  (Dkt. #32).  On July 13, 2021, Plaintiffs filed the SAC.  (Dkt. #34).

The eleven-page SAC sets forth eleven separate causes of action.  *First*, Plaintiffs allege that by covering only a small fraction of the costs of D's treatments, Defendants have breached their respective agreements.  (SAC ¶ 34).  *Second*, and for the same reason, Plaintiffs allege that Defendants have breached the covenant of good faith and fair dealing inherent in their respective agreements.  (*Id.* at ¶ 39).  *Third,* Plaintiffs allege that Defendants, through their respective agreements, promised to cover the costs of the services covered by the Plan; that Plaintiffs relied on Defendants' promises and did not accept or seek alternative employment or insurance coverage; and that Defendants did not honor their promise to cover the costs of D's treatment in a meaningful way.  (*Id.* at ¶¶ 39-41).  *Fourth*, Plaintiffs allege that Defendants engaged in fraud by misrepresenting that they would cover the costs of healthcare when they did not intend to cover the costs of D's treatments.  (*Id.* at ¶¶ 43-44).  *Fifth*, Plaintiffs allege that Defendants have conspired and agreed between and among themselves to deny substantial coverage for D's treatments to which Plaintiffs were entitled.  (*Id.* at ¶ 46).  *Sixth*, Plaintiffs allege that each Defendant aided and abetted the other Defendants in the breach of their

agreements.  (*Id.* at 8, ¶ 39).[2]  *Seventh*, Plaintiffs allege that the GHI
Defendants failed to comply with Section 3224-a of the New York Insurance
Law (the "Prompt Pay Law"), which requires insurers to pay the bill or claim of
a medical provider within 45 days of receipt.  (*Id.* at 8-9, ¶¶ 41-42).  *Eighth*,
Plaintiffs allege that the GHI Defendants violated Section 349 of the New York
General Business Law (the "New York Consumer Protection Act"), which
provides protection against "[d]eceptive acts or practices in the conduct of any
business, trade or commerce or in the furnishing of any service."  (*Id.* at 9,
¶¶ 44-45).  *Ninth*, Plaintiffs allege that the GHI Defendants have violated a state
mandate that all health policies cover autism services, including ABA.  (*Id.* at
¶¶ 47-48).  *Tenth*, Plaintiffs allege that the GHI Defendants have violated the
Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"), Pub. L.
No. 110-343, Div. C §§ 511-12, 122 Stat. 3861, 3881 (Oct. 3, 2008), which
requires that healthcare plans cover mental health services on par with
medical and surgical services.  (*Id.* at ¶¶ 50-51).  *Eleventh* and finally, Plaintiffs
seek a declaratory judgment that they are entitled to full reimbursement from
Defendants for the treatment of D going forward.  (*Id.* at ¶ 53).

The day after Plaintiffs filed the SAC, the Court denied as moot
Defendants' request for a pre-motion conference and directed Defendants to
respond to the SAC on or before July 28, 2021.  (Dkt. #35).  On July 28, 2021,

---

[2]     There is a flaw in the numbering of paragraphs in the SAC.  On page 8, paragraph 46 is
followed by paragraph 38, and the numbering continues from 38.  Citations to this
second set of paragraphs numbered 38-46 include the relevant page number.

the GHI Defendants renewed their request for a pre-motion conference regarding their anticipated motion to dismiss.  (Dkt. #37).  That same day, the City Defendants filed their motion to dismiss.  (Dkt. #36).  The following day, the City Defendants filed a pre-motion letter in accordance with the Court's Individual Rules.  (Dkt. #38).

On July 29, 2021, the Court denied the City Defendants' motion to dismiss without prejudice, due to the motion's noncompliance with the Court's Individual Rules, and converted the August 12, 2021 initial pretrial conference into a pre-motion conference.  On August 12, 2021, the Court held a pre-motion conference and set a briefing schedule for the motions to dismiss.  Both the GHI Defendants and the City Defendants filed their opening briefs and supporting documents on September 10, 2021.  (Dkt. #46-50).  Plaintiffs filed their consolidated opposition brief on October 15, 2021.  (Dkt. #51).  Both sets of Defendants filed their reply briefs on October 29, 2021.  (Dkt. #52, 53).  Accordingly, both motions to dismiss are fully briefed and ripe for the Court's consideration.

## DISCUSSION

### A.    Applicable Law

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation

omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  While the plausibility requirement "is not akin to a 'probability requirement,' ... it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Toward that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

**B.      The Court Dismisses Plaintiffs' Claims Against the GHI Defendants**

> **1.      Plaintiffs Lack Standing to Bring Certain Claims Against the GHI Defendants**

>> **a.      Brainbuilders Lacks Standing to Sue the GHI Defendants**

The Plan contains an unambiguous no-assignment provision, which reads, "You cannot assign any benefits or monies due from GHI to any person, corporation or other organization.  Any assignment by you will be void.  Assignment means the transfer to another person or organization of your right to the services provided or your right to collect from GHI for those services." (Campos Decl., Ex. B at 36).  The GHI Defendants argue that, given this provision, Brainbuilders lacks standing to assert a contract claim against the GHI Defendants.

Under New York Law, "an assignment is valid even where an agreement generally prohibits assignment, *unless* the agreement specifies that an assignment would be invalid or void." *Mosdos Chofetz Chaim, Inc.* v. *RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 226 (S.D.N.Y. 2014) (internal quotation marks and citation omitted) (emphasis added). "As the Second Circuit reasoned when evaluating an anti-assignment clause under New York law, 'only *express* limitations on assignability are enforceable.'" *Au New Haven, LLC* v. *YKK Corp.*, 210 F. Supp. 3d 549, 555 (S.D.N.Y. 2016) (quoting *Pravin Banker Associates, Ltd.* v. *Banco Popular Del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (emphasis in original)). "'[I]t has been consistently held that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments.'" *Mosdos Chofetz Chaim, Inc.*, 14 F. Supp. 3d at 226 (quoting *Sullivan* v. *Int'l Fid. Ins. Co.*, 465 N.Y.S.2d 235, 237 (2d Dep't 1983)).

The anti-assignment clause at issue in this case contains a definite declaration of the invalidity of an assignment, as it provides that "[a]ny assignment by you will be void." (Campos Decl., Ex. B at 36). *See Renfrew Ctr.* v. *Blue Cross & Blue Shield of Cent. N.Y., Inc.*, No. 94 Civ. 1527 (RSP) (GJD), 1997 WL 204309, at *5 (N.D.N.Y. Apr. 10, 1997) (finding assignment to be invalid where anti-assignment provision explicitly stated that any assignments would be "void"); *cf. Semente* v. *Empire Healthchoice Assurance, Inc.*, 147 F. Supp. 3d 117, 121 (E.D.N.Y. 2015), *on reconsideration*, No. 14 Civ. 5823 (DRH) (SIL), 2016 WL 4621076 (E.D.N.Y. Sept. 6, 2016) (concluding that assignment

11

was permitted where "[t]he anti-assignment clause at issue [did] not contain a definite declaration of the invalidity of an assignment"); *Mosdos Chofetz Chaim, Inc.*, 14 F. Supp. 3d at 227 (finding assignment to be valid where plaintiff "failed to identify any [] language in this or any other agreement that specifically invalidates or prohibits an assignment"); *Sullivan*, 465 N.Y.S.3d at 237 (finding assignment to be permitted where contract "contained no provision that the assignment [of benefits] should be void, nor does it provide that an assignee would acquire no rights by reason of any such assignment, nor [does] it provide that the contractor shall not be required to recognize or accept any such assignment").  Because any purported assignment of the Members' claims to Brainbuilders is void, the Court dismisses Brainbuilders' claims against the GHI Defendants.

>    **b.    The Members Have Standing to Sue the GHI Defendants for Their Own Benefit**

An assignment of a cause of action is, of course, analytically different from a power of attorney, such as the one granted by H to Rochel Sorotzkin.[3] "A provision by which one person grants another the power to sue on and collect on a claim confers on the grantee a power of attorney with respect to that claim." *Advanced Magnetics, Inc.* v. *Bayfront Partners Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997) (citing *Spencer* v. *Standard Chems. & Metals Corp.*, 237

---

[3]    In the original Complaint, Brainbuilders (but not Sorotzkin) alleged that it was relying upon an assignment of benefits from the Members and acting as the Members' attorney-in-fact.  (Dkt. #1, Ex. 1 at 2).  However, after Defendants removed the action to federal court, Brainbuilders filed an amended complaint replacing Brainbuilders with Sorotzkin as the Members' attorney-in-fact, "to avoid having to defend Brainbuilders' status as a valid attorney-in-fact, unnecessarily[.]"  (Dkt. #19 at 2 n.1).

N.Y. 479, 482 (1924)).  "The grant of a power of attorney ... is *not* the equivalent of an assignment of ownership."  *W.R. Huff Asset Mgmt. Co., LLC* v. *Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (quoting *Advanced Magnetics, Inc.*, 106 F.3d at 17-18) (emphasis added).  Therefore, the no-assignment provision does not bar Sorotzkin from bringing suit on behalf of H and D.

It is true, as the GHI Defendants argue, that the power of attorney does not grant standing to Brainbuilders or to Sorotzkin to sue the GHI Defendants in their own names.  (*See* GHI Br. 9).  "[A] power of attorney to sue, standing alone, does *not* under the New York law operate as an assignment to vest the attorney with such title or interest as will enable him to maintain the suit in his own name."  *Titus* v. *Wallick*, 306 U.S. 282, 289 (1939) (emphasis added) (citing *Spencer*, 237 N.Y. 479); *accord Raymond A. Semente, D.C., P.C.* v. *Empire Healthchoice Assurance, Inc.*, No. 14 Civ. 5823 (DRH) (SIL), 2021 WL 796613 (E.D.N.Y. Mar. 2, 2021) (holding that patient's power of attorney did not grant standing to out-of-network medical service provider to bring claims against insurer in provider's own name).  Sorotzkin does not, however, bring any claims in her own name.[4]  Instead, she purports to bring her claims as an "attorney-in-fact" in a representative capacity on behalf of H and D, who Sorotzkin alleges executed a power of attorney in her favor regarding any legal claims that they maintain in connection with the Plan.

---

[4]     As discussed in greater detail below, the GHI Defendants accuse Sorotzkin of suing for her own benefit as one of Brainbuilders' two owners.  (GHI Br. 2, 5; Wolfson Decl., Ex. B at 3).  However, Paragraph 1 of the SAC defines "Plaintiffs" to include H, D, and Brainbuilders, and does *not* include Sorotzkin.  (SAC ¶ 1).

Depending on the specific powers granted, a grant of a power of attorney may entitle the holder to bring a lawsuit in the name of the grantor. *Dennis* v. *JPMorgan Chase & Co.*, 342 F. Supp. 3d 404, 413 (S.D.N.Y. 2018).  Indeed, Sorotzkin's power of attorney specifically authorizes her "[t]o pursue, institute, settle, appeal or terminate any claims, litigation or administrative proceedings related to the collection of monies or other property owed to me and/or my dependent under any insurance policy or benefit plan[.]"  (Wolfson Decl., Ex. A at 2).  That said, the grant of a power of attorney must be valid in order for it to confer standing upon an attorney-in-fact acting as the legal representative of a third party.  The GHI Defendants argue that the power of attorney executed by the Members in favor of Sorotzkin is deficient under New Jersey law because it does not have a subscribing witness as required by New Jersey Statutes Annotated Sections 46:2B-8.9 and 46:14-2.1(b).  (GHI Br. 10 (citing Wolfson Decl., Ex. A at 3 (providing that the power of attorney "shall be governed by and interpreted in accordance with the laws of New Jersey"))).

Under New Jersey law, "[a] power of attorney must be in writing, duly signed and acknowledged in the manner set forth in R.S. 46:14-2.1."  N.J. Stat. Ann. § 46:2B-8.9.  The GHI Defendants argue that in order for a power of attorney to be "acknowledged in the manner set forth in R.S. 46:14-2.1," a subscribing witness must appear before a notary public, and the notary public must sign a certificate stating that the witness personally appeared before the notary public.  (GHI Br. 10 (citing N.J. Stat. Ann. § 46:14-2.1(b))).  Here, the notary, Elizabeth Mehling, doubled as the subscribing witness, a fact that the

GHI Defendants claim invalidates the power of attorney under New Jersey law. (*See id.*).  However, the "subscribing witness" requirement to which the GHI Defendants refer is found in New Jersey Statutes Annotated § 46:14-2.1(b), which details the requirements to "prove" a written instrument.  Subsection (a) outlines the requirements to "acknowledge" a written instrument, and that subsection does *not* require a subscribing witness to appear.  N.J. Stat. § 46:14-2.1(a).  Therefore, the Court finds that the power of attorney in favor of Rochel Sorotzkin is valid under New Jersey law.[5]

Undeterred, the GHI Defendants argue that Sorotzkin must still be barred from bringing this lawsuit, because paragraph 1 of the SAC expressly alleges that this action was commenced "for the benefit of Brainbuilders."  (GHI Reply 1 (quoting SAC ¶ 1)).  The GHI Defendants also observe that the SAC does not allege that any recovery will be given to H or D.  (*Id.*).  Further, in their prayer for relief, Plaintiffs ask the Court to order Defendants "to reimburse

---

[5]     The GHI Defendants correctly note that although the power of attorney purportedly was executed within the State of New York, it does not meet the requirements of New York General Obligations Law § 5-1501B, which requires a power of attorney to be signed by the principal's purported agent (here, Sorotzkin).  N.Y. Gen. Oblig. Law § 5-1501B(c). Further, it does not contain the statutory language required by Section 5-1501B(d)(1) ("Caution to the Principal") and Section 5-1501B(d)(2) ("Important Information for the Agent").  For these reasons, the power of attorney would be considered ineffective under New York law.  *See Berrian* v. *Siena Coll.*, 12 N.Y.S.3d 240 (2d Dep't 2015) (finding power of attorney invalid because of absence of required language and dismissing case for lack of standing).  However, the power of attorney provides that it "shall be governed by and interpreted in accordance with the laws of the State of New Jersey."  (Wolfson Decl., Ex. A at 4).  "A choice of law provision in a contract governs disputes about the 'existence or validity of that contract.'"  *Gallo* v. *Inter-Con Sec. Sys. Inc.*, No. 20 Civ. 4879 (KPF), 2021 WL 3913539, at *5 n.6 (S.D.N.Y. Sept. 1, 2021) (citing *Lisa Cooley, LLC* v. *Native, S.A.*, No. 20 Civ. 5800 (VEC), 2021 WL 860591, at *2 (S.D.N.Y. Mar. 5, 2021); *Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 50 (2d Cir. 2004)).

15

Plaintiffs for the billed amount for past treatment of D," but there is no indication that H has paid the billed amount, such that she would be the party reimbursed for those costs.  (SAC ¶ 53).

Standing to assert a claim for the benefit of the attorney-in-fact can only be conferred by a valid assignment of the claim.  *See W.R. Huff Asset Mgmt. Co., LLC* v, 549 F.3d at 108 (observing that "an assignment of claims transfers legal title or ownership of those claims," while a power of attorney does not). As the power of attorney does not purport to grant Sorotzkin or Brainbuilders legal or equitable title in the Members' claims — nor could it, without running afoul of the Plan's no-assignment provision — neither Sorotzkin nor Brainbuilders has standing to assert the Members' claims for the benefit of Brainbuilders.  Accordingly, the fact that Plaintiffs commenced this lawsuit "for the benefit of Brainbuilders" would seem to counsel in favor of dismissing all of Plaintiffs' claims against the GHI Defendants.  However, the Court need not make that determination, because even interpreting this lawsuit as validly commenced on behalf of and for the sole benefit of the Members, the Court must dismiss the Members' claims against the GHI Defendants for the reasons that follow.

### 2. Plaintiffs' Contract and Quasi-Contract Claims Against the GHI Defendants Fail to State a Claim

Plaintiffs allege claims against the GHI Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.  The Court considers each claim in turn.

16

*First*, the Court addresses Plaintiffs' breach of contract claim. "To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards* v. *Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (citation omitted).[6] A plaintiff must also identify the provisions of the contract that were breached. *LMEG Wireless, LLC* v. *Farro*, 140 N.Y.S.3d 593, 596 (2d Dep't 2021).

According to Plaintiffs, "Defendants[,] by only covering a small fraction of the costs of D's treatments[,] have breached their respective agreements." (SAC ¶ 34). Per the Plan documents, the amounts that GHI reimburses for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York." (*Id.* at ¶ 23). By implication, according to Plaintiffs, the GHI Defendants' failure to provide reasonable reimbursement was the result of a concerted effort on the part of GHI and the City Defendants to shortchange Plaintiffs. (*Id.*). As a result, Plaintiffs allege that GHI is in breach of its agreement with H. (*Id.*).

---

[6]     The Plan contains a choice-of-law clause that states: "This Contract is in all respects governed by the laws of New York State." (Campos Decl., Ex. B at 36). "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Backus* v. *U3 Advisors, Inc.*, No. 16 Civ. 8990 (GHW), 2017 WL 3600430, at *6 (S.D.N.Y. Aug. 18, 2017) (quoting *Hartford Fire Ins. Co.* v. *Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) (internal quotation marks omitted)). Here, all Defendants either are New York corporations or are headquartered in New York, "H" and "D" are Members of the Plan, and "H" is a New York City employee. What is more, both parties have cited to New York law in their briefing. *See Krumme* v. *Westpoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2020) (explaining that the parties' "implied consent … is sufficient to establish choice of law"). Accordingly, the Court applies New York law.

Plaintiffs' allegations in the SAC, however, are inadequate to state a claim for breach of contract.  Plaintiffs do not allege that any specific contractual provision was purportedly breached, let alone how or why it was breached.  As the GHI Defendants observe, the SAC "can be searched in vain for any allegation that a particular provision in the [Plan] has been breached, including why the amounts paid by the GHI Defendants breached the [Plan's] terms." (GHI Br. 11).  Accordingly, Plaintiffs' breach of contract claim must be dismissed for failure to state a claim.  *See Gianelli* v. *RE/MAX of New York, Inc.*, 41 N.Y.S.3d 273, 274 (2d Dep't 2016) ("A breach of contract cause of action fails as a matter of law in the absence of any showing that a specific provision of the contract was breached.").

*Second*, as to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, it is true that New York recognizes a covenant of good faith and fair dealing that inheres in all contracts.  *Phoenix Cos., Inc.* v. *Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 587 (S.D.N.Y. 2021) (citing *511 W. 232nd Owners Corp.* v. *Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002)).  "This covenant embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (citing *511 W. 232nd Owners Corp.*, 98 N.Y.2d at 153 (internal citations omitted)).  To state a claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs must establish that (i) Defendants owed Plaintiffs a duty to act in good faith and conduct fair dealing; (ii) Defendants breached that duty; and (iii) the breach of duty

18

proximately caused Plaintiffs' damages.  *Id.* (citing *Washington* v. *Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009)).

Critically, "[a] party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim."  *Phoenix Cos., Inc.*, 554 F. Supp. 3d at 587 (citing *Deutsche Bank Sec., Inc.* v. *Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008)).  Here, Plaintiffs' claim for breach of the implied covenant is, word for word, identical to Plaintiffs' breach of contract claim.  It reads, in its entirety, "The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.  Defendants by only covering a small fraction of the costs of D's treatments have breached the covenant of good faith and fair dealing implied by their respective agreements."  (SAC ¶¶ 38-39).[7] Plaintiffs' breach of contract and breach of implied covenant claims are predicated on the same allegations that Defendants covered only a small fraction of the cost of D's treatments.  Accordingly, the Court dismisses the implied covenant claim as duplicative of Plaintiffs' breach of contract claim.

*Third*, the Court addresses Plaintiffs' promissory estoppel claim.  "[T]o state a claim for promissory estoppel under New York law, Plaintiff must allege: '[i] a sufficiently clear and unambiguous promise; [ii] reasonable reliance on the

---

[7]     There is another flaw in the numbering of paragraphs in the SAC.  On page 7, paragraph 34 is followed by paragraphs 38 and 39.  Paragraphs 38 and 39 then repeat, and the numbering continues from there until the flaw on page 8 of the SAC, as discussed in note 2.  This citation refers to the first set of paragraphs numbered 38 and 39 on page 7 of the SAC.

promise; and [iii] injury caused by the reliance[.]'" *Barker* v. *Bancorp, Inc.*,
No. 21 Civ. 869 (KPF), 2022 WL 595954, at *14 (S.D.N.Y. Feb. 25, 2022);
*accord Castellotti* v. *Free*, 27 N.Y.S.3d 507, 513 (1st Dep't 2016). "Promissory
estoppel is a legal fiction designed to substitute for contractual consideration
where one party relied on another's promise without having entered into an
enforceable contract." *Bader* v. *Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d
397, 414 (S.D.N.Y. 2011). "A promise that is too vague or too indefinite is not
actionable under a theory of promissory estoppel; the alleged promise must be
clear and unambiguous." *Barker*, 2022 WL 595954, at *14 (internal citations
omitted).

 Promissory estoppel is a quasi-contract claim, and the law is clear that
"[t]he existence of a valid and enforceable written contract governing a
particular subject matter ordinarily precludes recovery in quasi contract for
events arising out of the same subject matter." *Barker*, 2022 WL 595954, at
*11 (quoting *Beth Israel Med. Ctr.* v. *Horizon Blue Cross & Blue Shield of N.J.,
Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (internal citations omitted)). "A 'quasi
contract' only applies in the absence of an express agreement, and is not really
a contract at all, but rather a legal obligation imposed in order to prevent a
party's unjust enrichment." *Id.* (quoting *Beth Israel Med. Ctr.*, 448 F.3d at
587). "Briefly stated, a quasi-contractual obligation is one imposed by law
where there has been no agreement or expression of assent, by word or act, on
the part of either party involved." *Id.* (quoting *Beth Israel Med. Ctr.*, 448 F.3d at
587). Only where "a bona fide dispute exists as to the existence of the contract,

20

the plaintiff may proceed on both breach of contract and quasi-contract theories." *Beth Israel Med. Ctr.*, 448 F.3d at 587 (citing *Nakamura* v. *Fujii*, 677 N.Y.S.2d 113, 116 (1st Dep't 1998)).

Plaintiffs allege that (i) Defendants, through their respective agreements, promised to cover the costs of services covered by the Plan; (ii) Plaintiffs relied on Defendants' promises and did not seek alternative employment or insurance coverage; and (iii) Defendants did not honor their promises to cover the costs of D's treatments in a meaningful way.  (SAC ¶¶ 39-41).[8]  The Court observes first that Plaintiffs' promissory estoppel claim is precluded by the existence of the Plan, an enforceable contract between the Members and the GHI Defendants that governs the subject matter of Plaintiffs' claim — a fact Plaintiffs seem to acknowledge by referring to the Defendants' "respective agreements." Moreover, even if no written agreement existed between the GHI Defendants and the Members, Plaintiffs fail to allege that the GHI Defendants made *any* promise to them concerning the amounts the Plan would pay for services rendered by Brainbuilders, let alone a clear and unambiguous promise upon which Plaintiffs allegedly relied.  Although Plaintiffs conclusorily allege that "Defendants, through their respective agreements, promised to cover the costs of the services covered by the Plan" (SAC ¶ 39),[9] Plaintiffs allege no facts concerning this promise, such as when it was allegedly made; to whom it was allegedly made; which provision in the Plan allegedly constituted a promise; or

---

[8]   This citation refers to the second paragraph 39 appearing on page 7 of the SAC.

[9]   This citation refers to the second paragraph 39 appearing on page 7 of the SAC.

the amount the GHI Defendants allegedly promised to pay.  "A complaint does not suffice 'if it tenders "naked assertion[s]" devoid of "further factual enhancement."'"  *Cambridge Cap. LLC* v. *Ruby Has LLC*, 565 F. Supp. 3d 420, 458 (S.D.N.Y. 2021) (dismissing promissory estoppel claim where the complaint alleged that the defendant promised it would act in good faith to consummate an investment transaction, but alleged no facts as to what the defendant promised about moving forward in good faith) (quoting *Iqbal*, 556 U.S. at 678).  Accordingly, the Court dismisses Plaintiffs' promissory estoppel claim.

### 3.     Plaintiffs' Tort Claims Against the GHI Defendants Fail to State a Claim

The Court next considers Plaintiffs' three tort claims against the GHI Defendants, for fraud, civil conspiracy, and civil aiding and abetting.  (SAC 7-8).  To state a claim for fraud under New York law, a plaintiff must allege (i) a misrepresentation or omission of material fact; (ii) which the defendant knew to be false; (iii) which the defendant made with the intention of inducing reliance; (iv) upon which the plaintiff reasonably relied; and (v) which caused injury to the plaintiff.  *Cambridge Cap. LLC*, 565 F. Supp. 3d at 461.  Claims for fraud must also satisfy the heightened pleading requirements of Rule 9(b) and be pleaded "with particularity."  Fed. R. Civ. P. 9(b); *see also B & M Linen, Corp.* v. *Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010).  Under Rule 9(b), a plaintiff alleging that a defendant made false statements must "[i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made,

and [iv] explain why the statements were fraudulent." *Cambridge Cap. LLC*, 565 F. Supp. 3d at 461 (quoting *Novak* v. *Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (internal citation omitted)).  Particularity "means the who, what, where, when and how: the first paragraph of any newspaper story." *Id.* (quoting *Antigenics Inc.* v. *U.S. Bancorp Piper Jaffray, Inc.*, No. 03 Civ. 0971 (RCC), 2004 WL 51224, at *3 (S.D.N.Y. Jan. 9, 2004) (internal citation omitted)).  Rule 9(b) also requires that "the pleading 'explain why the statements were fraudulent.'" *Id.* at 463 (quoting *Rombach* v. *Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (internal citation omitted)).  "[P]laintiffs must do more than say that the statements ... were false and misleading; they must demonstrate with specificity why and how that is so." *Id.* (quoting *Rombach*, 355 F.3d at 174); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 392 (S.D.N.Y. 2006) ("Under the pleading requirements, a complaint must explain, with adequate specificity, why the alleged false or misleading statements were actually false or misleading when made.").

Plaintiffs' fraud claim reads, in its entirety, "The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein. Defendants, through their respective agreements, misrepresented that they will cover and protect against the costs of healthcare.  Defendants, contrary to their representations, did not intend to truly cover the costs of D's treatments." (SAC ¶¶ 42-44).  These bare allegations plainly do not meet the pleading requirements of Rule 9(b).

Further, Plaintiffs' fraud claim is duplicative of its breach of contract claim. "It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." *Sussman Sales Co., Inc.* v. *VWR Int'l, LLC*, No. 20 Civ. 2869 (KPF), 2021 WL 1165077, at *11 (S.D.N.Y. Mar. 26, 2021) (quoting *EQT Infrastructure Ltd.* v. *Smith*, 861 F. Supp. 2d 220, 233 (S.D.N.Y. 2012) (citation omitted)), *on reconsideration in part*, No. 20 Civ. 2869 (KPF), 2021 WL 6065760 (S.D.N.Y. Dec. 21, 2021). To maintain a separate claim for fraud, a plaintiff must (i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) point to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (iii) seek special damages that are unrecoverable as contract damages. *Id.* (citing *Merrill Lynch & Co.* v. *Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007)). In determining whether a fraud claim is duplicative of a contract claim, New York courts distinguish between "a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." *Id.* (quoting *Allegheny Energy, Inc.*, 500 F.3d at 184). Given Plaintiffs' failure to identify either a specific contractual provision that was breached or a specific misrepresentation giving rise to fraud, the Court can discern no daylight between Plaintiffs' breach of contract and fraud claims. For this reason, and for Plaintiffs' aforementioned failure to meet the heightened pleading

24

requirements of Rule 9(b), their fraud claim against the GHI Defendants must be dismissed.

The Court next addresses Plaintiffs' claims for civil conspiracy and civil aiding and abetting.  Plaintiffs' civil conspiracy claim reads, in its entirety, "The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.  Defendants have conspired and agreed between themselves to deny substantial coverage for D's treatments, which Plaintiffs were entitled to, and together committed the actions alleged herein." (SAC ¶¶ 45-46).  Plaintiffs' civil aiding and abetting claim adds, "Each Defendant aided the other Defendants in the breach of their duties." (*Id.* at 8, ¶ 39).

"New York does not recognize civil conspiracy to commit a tort as an independent cause of action, and a cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort." *ExpertConnect, L.L.C.* v. *Fowler*, No. 18 Civ. 4828 (LGS), 2019 WL 3004161, at *8 (S.D.N.Y. July 10, 2019) (quoting *Williams* v. *Williams*, 53 N.Y.S.3d 152, 153 (2d Dep't 2017), *leave to appeal denied*, 30 N.Y.3d 913 (2018)).  "To state a claim for civil conspiracy, 'the plaintiff must allege a [i] cognizable tort, coupled with [ii] an agreement between the conspirators regarding the tort, and [iii] an overt action in furtherance of the agreement.'" *Id.* (quoting *Faulkner* v. *Yonkers*, 963 N.Y.S.2d 340, 341 (2d Dep't 2013) (internal citation omitted)).  Further, to state a claim for aiding and abetting fraud under New York law, "plaintiffs must adequately allege: [i] the existence of a fraudulent scheme; [ii] that the defendant had actual knowledge of the fraud; and [iii] that the defendant

25

provided substantial assistance to advance the fraudulent scheme." *Heinert* v.

*Bank of Am. N.A.*, 835 F. App'x 627, 630 (2d Cir. 2020) (summary order)

(internal citation omitted).  Accordingly, Plaintiffs' civil conspiracy and aiding

and abetting claims both depend on the survival of the SAC's fraud claim.  As

that claim fails, so too do Plaintiffs' claims for civil conspiracy and civil aiding

and abetting.

4.   **Plaintiffs' Statutory Claims Against the GHI Defendants Fail to State a Claim**

In addition to the above-described contract and tort claims, H and D

raise a series of New York state law claims against the GHI Defendants, namely

for violations of (i) New York's Prompt Pay Law, N.Y. Ins. Law § 3224-a(a);

(ii) New York's Consumer Protection Law, N.Y. Gen. Bus. Law § 349(a); and

(iii) New York Insurance Law § 3221(l)(17)(A), which Plaintiffs refer to as the

"New York Autism Mandate" (the "Autism Mandate").  (SAC 8-9, ¶¶ 40-48).

Finally, Plaintiffs allege violations of the federal Mental Health Parity and

Addiction Equity Act (the "MHPAEA").  (SAC ¶¶ 49-51).  For the reasons stated

below, the Court dismisses each of these claims for failure to state a claim.

*First*, Plaintiffs allege that GHI failed to comply with New York's Prompt

Pay Law.  (SAC 9, ¶ 42).  That statute requires insurers to pay claims to

policyholders or health care providers "within thirty days of receipt of a claim

or bill for services rendered that is transmitted via the internet or electronic

mail, or forty-five days of receipt of a claim or bill for services rendered that is

submitted by other means, such as paper or facsimile."  N.Y. Ins. Law § 3224-

a(a).  Where the insurer's obligation to pay the claim is "not reasonably clear due to a good faith dispute regarding … the benefits covered under a contract or agreement," the insurer must pay the undisputed portion of the claim in accordance with subsection (a), and must also notify the policyholder or health care provider, in writing, (i) whether the claim has been denied or partially approved; (ii) which claim it is not obligated to pay, stating the specific reasons why it is not liable; (iii) all additional information needed to determine liability; and (iv) the specific type of plan or product in which the policyholder is enrolled.  *Id.* § 3224-a(b).  While Plaintiffs allege that GHI has "ignor[ed]" many of Plaintiffs' appeals (SAC ¶ 29), the SAC does not allege that the GHI Defendants failed to respond to a single identifiable claim within the prescribed time period or that they failed to provide timely written notice of their adjudication of any such claim.  (*See* GHI Br. 19).  Accordingly, this claim must be dismissed for failure to state a claim.

*Second*, Plaintiffs allege that the GHI Defendants engaged in actions violating New York's Consumer Protection Law, which protects consumers against "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  (SAC 9, ¶¶ 44-45).  N.Y. Gen. Bus. Law § 349(a).  Plaintiffs' claim reads, in its entirety, "Defendants have engaged in actions that violated the foregoing provision."  (SAC ¶ 45).  Plaintiffs do not allege with specificity a single action taken by Defendants that constitutes a violation of New York's Consumer Protection Law, nor do they

explain why any of Defendants' conduct is violative of that provision.

Accordingly, the Court dismisses Plaintiffs claim for failure to state a claim.

*Third*, Plaintiffs allege that the GHI Defendants have violated the Autism

Mandate. (SAC 9, ¶¶ 46-48). New York Insurance Law § 3221 provides:

> Every group or blanket accident and health insurance
> policy delivered or issued for delivery in this state which
> provides coverage for hospital or surgical care coverage
> shall not exclude coverage for screening, diagnosis and
> treatment of medical conditions otherwise covered by
> the policy because the treatment is provided to diagnose
> or treat autism spectrum disorder.

N.Y. Ins. Law § 3221(l)(17)(A). The GHI Defendants argue in the first instance

that the Autism Mandate does not provide a private right of action. (GHI

Br. 22-23), and so the Court begins with that analysis.

"In New York, the essential factors governing whether an implied private

right of action exists are: '[i] whether the plaintiff is one of the class for whose

particular benefit the statute was enacted; [ii] whether recognition of a private

right of action would promote the legislative purpose; and [iii] whether creation

of such a right would be consistent with the legislative scheme.'" *Bushell* v.

*UnitedHealth Grp. Inc.*, No. 17 Civ. 2021 (JPO), 2018 WL 1578167, at *2

(S.D.N.Y. Mar. 27, 2018) (quoting *Sheehy* v. *Big Flats Cmty. Day, Inc.*, 73

N.Y.2d 629, 633 (1989)). "The third factor is the most critical." *Id.* (citing

*Carrier* v. *Salvation Army*, 88 N.Y.2d 298, 302 (1996)). Since the New York

Insurance Law gives the New York Superintendent of Insurance "broad

regulatory powers over the health plans at issue," courts have consistently

concluded that "[the] recognition of a private right of action in favor of the

patients would not advance the legislative purpose and would be inconsistent with the legislative scheme." *Hudes* v. *Vytra Health Plans Long Island Inc.*, 744 N.Y.S.2d 80, 82 (3d Dep't 2002). More specifically, courts have repeatedly found that Section 3221 does not imply a private right of action. *See, e.g., Doe* v. *United Health Grp. Inc.*, No. 17 Civ. 4160 (AMD) (RL), 2018 WL 3998022, at *6-7 (E.D.N.Y. Aug. 20, 2018) (finding no implied private right of action under Section 3221(1)(5)(A)); *Bushell*, 2018 WL 1578167, at *3 (same); *Hudes*, 744 N.Y.S.2d at 82 (finding no implied private right of action for chiropractors and patients under Section 3221(k)(11)).

Plaintiffs respond that whether or not the law provides a private right of action, the Plan's claim that it is in compliance with the New York Insurance Law effectively incorporates the Autism Mandate into the Plan. (Pl. Opp. 24). In support, Plaintiffs point to the provision in the Plan's Certificate of Coverage that reads, "The insurance evidenced by this Certificate meets the minimum standards for basic medical insurance as defined by the New York State Insurance Department." (Pollak Decl., Ex. A at 2). The GHI Defendants reply that even if it is true that the Plan incorporates the Autism Mandate, Plaintiffs have nonetheless failed to allege that the GHI Defendants have "exclude[d] coverage" as required to plead a violation of New York Insurance Law § 3221(l)(17)(A). (GHI Reply 10). Instead, the SAC merely alleges that "[t]he State of New York mandates that all health insurance policies cover autism services, including ABA[.] The Plan claims to comply with the Mandate, but its actual reimbursements belie such claim." (SAC ¶¶ 47-48). Notably, Plaintiffs

do not allege that the GHI Defendants have "exclude[d] coverage … because the treatment is provided to diagnose or treat autism spectrum disorder." *See* N.Y. Ins. Law § 3221(l)(17)(A). Instead, Plaintiffs merely argue that, in their opinion, the reimbursement rate for autism treatment is too low. These musings, however, fail to state a claim.

*Fourth*, Plaintiffs allege that the GHI Defendants have violated the federal MHPAEA, which requires group health plans and health insurance issuers to ensure that the financial requirements (deductibles, copays, etc.) and treatment limitations applied to mental health benefits be no more restrictive than the predominant financial requirements and treatment limitations applied to substantially all medical and surgical benefits covered by the plan or insurance. (SAC ¶¶ 49-51). *See N.Y.S. Psychiatric Ass'n, Inc.* v. *UnitedHealth Grp.*, 798 F.3d 125, 128 (2d Cir. 2015) (describing the requirements of the MHPAEA). Plaintiffs allege that the GHI Defendants have violated the MHPAEA by failing to make available the reasons for their reimbursement determinations (*id.* at ¶ 27 (citing 29 C.F.R. § 2590.712(d))), and by "not covering autism services, a mental health condition, on par with medical and surgical services" (*id.* at ¶ 51 (citing 29 U.S.C. § 1185a)).

As the GHI Defendants point out in their brief (GHI Br. 23), there is no private right of action under the MHPAEA, although portions of it are incorporated into ERISA and may be enforced using the civil enforcement provisions of ERISA contained at 29 U.S.C. § 1132. *See generally Gallagher* v. *Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 258 (S.D.N.Y.

2018); *Munnelly* v. *Fordham Univ. Fac.*, 316 F. Supp. 3d 714, 728 (S.D.N.Y. 2018).  Indeed, both of the provisions Plaintiffs cite in support of these allegations — 29 C.F.R. § 2590.712(d) and 29 U.S.C. § 1185a — are ERISA regulations.  Significantly, as Plaintiffs concede, the Plan is not an ERISA plan. (SAC ¶ 27 (describing the Plan as a "grandfathered non-ERISA healthcare plan")).  As a governmental plan, the Plan is exempt from ERISA's regulatory reach.  *See* 29 U.S.C. § 1002(32) (defining "governmental plan" to include "a plan established or maintained for its employees by … the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing"); *id.* § 1003(b)(1) (exempting governmental plans from ERISA).

Similar to their Autism Mandate arguments, Plaintiffs respond that regardless of whether the MHPAEA provides a private right of action, the GHI Defendants are still contractually obligated to fulfill the MHPAEA's provisions. (Pl. Opp. 25).  Just as before, however, Plaintiffs have failed to identify a single provision of the Plan demonstrating that its financial requirements or treatment limitations are any more restrictive for mental health conditions than they are for any other health condition.  Accordingly, this claim, too, must be dismissed for failure to state a claim.

## C. The Court Dismisses Plaintiffs' Claims Against the City Defendants

### 1. OLR Is Not a Suable Entity

Turning now to the City Defendants' motion, the Court begins with their argument that Plaintiffs' claims against OLR must be dismissed because a City

31

agency is not an entity that can be sued.  (City Br. 4).  Plaintiffs retort that the City Charter only exempts OLR from penalties sounding in tort, not contract, and that the City Charter "acknowledges the fundamental suability of OLR." (Pl. Opp. 26-27).  The Court disagrees.

The Charter is clear that OLR is a non-suable entity.  *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Shapiro* v. *Adam*, No. 22 Civ. 2603 (KPF), 2022 WL 1063155, at *1 (S.D.N.Y. Apr. 5, 2022) (dismissing plaintiff's claims against City agencies, including OLR); *see also Emerson* v. *City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").  Accordingly, Plaintiffs' claims against OLR are dismissed.

### 2.     Plaintiffs' Claims Against DOE Are Procedurally Barred

In contrast to OLR, DOE is a suable entity because "the City of New York and the Department of Education are separate legal entities."  *A.V. by H.V.* v. *N.Y.C. Dep't of Educ.*, 74 Misc. 3d 1220(A), 162 N.Y.S.3d 692 (N.Y. Sup. Ct. 2022) (citing N.Y. Educ. Law § 2551); *see also Tanaysha T.* v. *City of New York*, 12 N.Y.S.3d 908, 909 (2d Dep't 2015) (observing that the City was not a proper party to an action seeking damages for the alleged negligence of DOE, "an entity from which it is separate and distinct"); *Matson* v. *Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 78 n.8 (2d Cir. 2011) ("[I]ts name as the New York City Department of Education notwithstanding, the DOE does not appear

to be a city department within the contemplation of the City Charter."). In 2002, the New York Education Law was amended to provide for greater mayoral control of education matters in New York City, and a concomitant limit on the power of the Board of Education ("BOE"). *See Perez ex rel. Torres* v. *City of New York*, 837 N.Y.S.2d 571, 572 (1st Dep't 2007), *leave to appeal denied*, 10 N.Y.3d 708 (2008).[10] Even after that amendment, the City and the Board remain separate legal entities. *Id.* (citing *Gonzalez* v. *Esparza*, No. 02 Civ. 4175 (SWK), 2003 WL 21834970, at *2 (S.D.N.Y. Aug. 6, 2003) ("[C]hanges in the statutory scheme regarding the interplay between the Board [of Education] and the City can be best described as 'political,' with the Board continuing to exist as a separate and distinct legal entity from the City.")).

Section 3813 of the New York Education Law requires the filing of a notice of claim prior to the commencement of an action against DOE or any of its officers. *See* N.Y. Educ. Law § 3813(1). Specifically, under New York law, a plaintiff must file a notice of claim within ninety days after the claim arises, plead that it has been served, allow thirty days to elapse after the notice is filed before filing a complaint, and demonstrate that in that time, the defendant either neglected or refused to satisfy the claim. *Smith* v. *N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011) (citing N.Y. Educ. Law § 3813(1); N.Y. Gen. Mun. Law § 50-e). "[T]he filing of a notice of claim within three

---

[10]    While the Board of Education ("BOE"), an entity created by New York State law, and DOE, an entity created in 2002 by the BOE, are not synonymous, *see Matson* v. *Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 77 (2d Cir. 2011) (Straub, J., dissenting in part and concurring in part), the differences between them are not relevant here.

months after the accrual of a claim [is] an absolute condition precedent to the filing of a lawsuit." *Fierro* v. *City of New York*, No. 20 Civ. 9966 (GHW), 2022 WL 428264, at *11 (S.D.N.Y. Feb. 10, 2022) (citing *Santiago* v. *Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006)).

"[F]ailure to present a claim within the statutory time limitation or to notify the correct party is a fatal defect[.]" *Jovasevic* v. *Mount Vernon City Sch. Dist.*, 127 N.Y.S.3d 872, 873 (2d Dep't 2020) (citing *Parochial Bus Sys., Inc.* v. *Bd. of Educ. of City of N.Y.*, 60 N.Y.2d 539, 547 (1983)), *leave to appeal denied*, 36 N.Y.3d 906 (2021). Although the New York Court of Appeals "has held that, where the school district has been sufficiently informed of the claim, all that is required is substantial compliance with the statute regarding the degree of descriptive detail in a notice of claim," it has "nevertheless, always insisted that statutory requirements mandating notification to the proper public body or official must be fulfilled." *Id.* (citing *Parochial Bus Sys., Inc.*, 60 N.Y.2d at 547). Of note, "[t]he statutory prerequisite is not satisfied by presentment to any other individual or body, and, moreover, the statute permits no exception regardless of whether the Board had actual knowledge of the claim or failed to demonstrate actual prejudice." *Id.* (citing *Parochial Bus Sys., Inc.*, 60 N.Y.2d at 548). Where a plaintiff fails to comply with Section 3813's notice of claim requirement, the plaintiff's claims must be dismissed. *See, e.g., Jovasevic*, 127 N.Y.S.3d at 873 (affirming dismissal for failure to comply with Section 3813's notice of claim requirement); *Capstone Enters. of Port Chester, Inc.* v. *Valhalla Union Free Sch. Dist.*, 809 N.Y.S.2d 917, 918 (2d Dep't 2006) (same); *see also*

34

*Hardy* v. *N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999)

("Failure to comply with these requirements ordinarily requires a dismissal for

failure to state a cause of action.").

Plaintiff H's notice of claim was filed by counsel and presented to the New

York City Comptroller on June 19, 2020. (*See* Bridge Decl., Ex. B). When

asked, "What agency/employer are you making this claim against?," H

responded, "OFFICE MUNICIPAL LABOR RELATIONS." (*Id.*). The City

Defendants argue that this notice did not sufficiently inform DOE of Plaintiffs'

claims, and that Plaintiffs' claims against DOE must therefore be dismissed.

(City Br. 5). Plaintiffs respond that the 2002 amendments to the Education

Law rendered DOE a subagency of the City, under the direct control of the

Mayor. (Pl. Opp. 27-28). From this, Plaintiffs reason, the City is DOE's

"governing body," and it is sufficient that they served notice on the City's

Comptroller. (*Id.* at 27).

The Court disagrees with Plaintiffs' contention that providing notice to

the City Comptroller effectively equates to providing notice to DOE. As stated

above, despite amendments made to the Education Law in 2002, the City and

DOE remain separate legal entities. *See Perez*, 837 N.Y.S.2d at 572.[11]

Further, as stated above, Plaintiffs' failure to notify the correct party is "a fatal

---

[11]    Indeed, if Plaintiffs were correct that the 2002 amendments to the Education Law
        transformed DOE into a subagency of the City, DOE would no longer be a suable entity.
        *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of
        penalties for the violation of any law shall be brought in the name of the city of New
        York and not in that of any agency, except where otherwise provided by law.").

defect." *Jovasevic*, 127 N.Y.S.3d at 873 (affirming denial of petition for reinstatement and back pay where petitioner presented his purported notice of claim to the School District's Superintendent rather than the BOE, even though the BOE ultimately obtained actual knowledge of the letter from the Superintendent's office).  In light of the foregoing, Plaintiffs' claims against DOE must be dismissed.[12]

### 3.    Plaintiffs' Tort Claims Against the City Are Procedurally Barred and Fail to State a Claim

Next, the City Defendants argue that Plaintiffs' tort claims against the City — for fraud, civil conspiracy, and aiding and abetting — are untimely under New York General Municipal Law § 50-e(1)(a).  (City Br. 7).  This section provides, in pertinent part, that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation ... the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises[.]"  N.Y. Gen. Bus. Law § 50-e(1)(a).  While Plaintiffs did file a notice of claim with the City on June 19, 2020, the City Defendants argue that Plaintiffs' tort claims in fact accrued two years earlier, in May 2018, when (i) H allegedly relied on the City's purported misrepresentations that the Plan would sufficiently cover Brainbuilders's

---

[12]    As Plaintiffs' claims against DOE are dismissed for failure to provide a notice of claim in accordance with New York Education Law § 3813, the Court need not consider whether these claims were also untimely under this same section, which requires a verified claim to be presented to the BOE within three months of the accrual of any such claim. (*See* City Br. 8).

services and (ii) GHI denied H's payment appeal.  (City Br. 7-8 (citing Bridge Decl., Ex. C)).  Plaintiffs counter that the alleged tortious conduct was "continuing and ongoing," and thus fell within the statute of limitations.  (Pl. Opp. 28-29).  Alternatively, the City Defendants argue that Plaintiffs' claims for fraud, civil conspiracy, and civil aiding and abetting fail to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b) discussed earlier. (City Br. 13).  Unsurprisingly, Plaintiffs disagree.  (Pl. Opp. 19-20, 33).

A claim for fraud accrues when "the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint." *Meimaris* v. *Royce*, No. 19-3339-cv, 2021 WL 5170725, at *3 (2d Cir. Nov. 8, 2021).  Stated differently, a fraud claim accrues "when a plaintiff takes detrimental action in reliance on a fraudulent statement, and not at the time the statement is made[.]"  *Ramiro Aviles* v. *S & P Glob., Inc.*, 380 F. Supp. 3d 221, 275 (S.D.N.Y. 2019).  However, "New York's continuing tort doctrine tolls the statute of limitations based on 'wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit.'"  *Abdulaziz* v. *McKinsey & Co., Inc.*, No. 21 Civ. 1219 (LGS), 2021 WL 4340405, at *3 (S.D.N.Y. Sept. 22, 2021) (quoting *Estreicher* v. *Oner*, 49 N.Y.S.3d 530, 532 (2d Dep't 2017) (internal citation omitted)), *aff'd*, No. 21-2921, 2022 WL 2444925 (2d Cir. July 5, 2022).

"The continuing tort doctrine applies only where the 'final actionable event' of the allegedly harmful course of conduct falls within the statute of limitations."  *Abdulaziz*, 2021 WL 4340405, at *3 (quoting *Estreicher*, 49

N.Y.S.3d at 532). "New York courts treat the 'final actionable event' as the last tortious act by the tortfeasor, not the last injury sustained by the victim." *Id.* (citing *Mintz & Gold, LLP* v. *Zimmerman*, 898 N.Y.S.2d 116, 117 (1st Dep't 2010) (holding that the plaintiff's claim was timely under the continuing tort doctrine because the defendant acted within the limitations period); *Shannon* v. *MTA Metro-N. R.R.*, 704 N.Y.S.2d 208, 209 (1st Dep't 2000) (same)). "As a general matter, the continuing [tort] doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Kubicek* v. *Westchester Cnty.*, No. 08 Civ. 372 (KMK), 2009 WL 3720155, at *6 (S.D.N.Y. Oct. 8, 2009) (quoting *Trinidad* v. *N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)); *see also Bernstein* v. *Money Grp., Inc.*, 228 F. Supp. 2d 415, 418 (S.D.N.Y. 2002) ("As a general rule, courts in the Second Circuit have viewed continuing [tort] arguments with disfavor.").

The Court agrees with the City Defendants that Plaintiffs' tort claims are untimely. Plaintiffs allege that they took detrimental action in reliance on the City Defendants' allegedly fraudulent statements by not seeking alternative employment or additional insurance coverage, and that Plaintiffs' fraud claim accrued when H detrimentally relied on the City Defendants' purported misrepresentations that they would cover the cost of healthcare. (*See* SAC ¶¶ 40, 43). While Plaintiffs do not specify a date on which this detrimental reliance occurred, a generous interpretation of the allegations in the SAC indicates that this occurred in May 2018, when the GHI Defendants denied H's appeal. (*See* Dkt. #36-4). Accordingly, Plaintiffs needed to file their notice of

claim with the City by August 2018, approximately 22 months prior to the date Plaintiffs actually filed their notice of claim.

Moreover, even if Plaintiffs' tort claims against the City were timely, which they were not, they would be dismissed for failure to state a claim, for the same reasons the Court dismissed Plaintiffs' tort claims against the GHI Defendants.  *First*, Plaintiffs' sparse and conclusory allegations of fraud plainly do not meet the pleading requirements of Rule 9(b).  *Second*, Plaintiffs' civil conspiracy and aiding and abetting claims depend on the survival of the SAC's fraud claim.  *See ExpertConnect, L.L.C.*, 2019 WL 3004161, at *8 ("[A] cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort."); *Heinert*, 835 F. App'x at 630 ("To state a claim for aiding and abetting fraud under New York law, plaintiffs must adequately allege … the existence of a fraudulent scheme[.]").  However, as that claim fails, so too do Plaintiffs' claims for civil conspiracy and civil aiding and abetting.  Accordingly, all of Plaintiffs' tort claims against the City Defendants must be dismissed.

### 4. Plaintiffs' Contract Claims Against the City Fail to State a Claim

Plaintiffs allege claims against the City for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. Here, as with the same claims against the GHI Defendants, each claim must be dismissed for failure to state a claim.

*First*, the Court dismisses Plaintiffs' claim against the City for breach of contract, for largely the same reasons it dismissed their analogous claim

against the GHI Defendants.  To review, Plaintiffs allege that, per the Plan

documents, the amounts that GHI reimbursed for the Plan's covered services

"are based upon data collected by GHI and agreed to by the City of New York."

(SAC ¶ 23).  By implication, according to Plaintiffs, the GHI Defendants' failure

to provide reasonable reimbursement was the result of a concerted effort on the

part of GHI and the City Defendants to shortchange Plaintiffs.  (*Id.*).  As a

result, Plaintiffs allege, the City Defendants are in breach of their commitment

to their employee and are complicit in GHI's breach.  (*Id.*).  Here, as before,

Plaintiffs' allegations are inadequate to state a claim for breach of contract.

While Plaintiffs allege the existence of an employment contract between DOE

and its employee, H, they can point to no agreement between themselves and

the City.  The allegation that "Plan documents" state that reimbursement

amounts "'are based upon data collected by GHI and agreed to by the City"

(*id.*), does not constitute an agreement between Plaintiffs and the City.

Plaintiffs, therefore, have failed to plead the first element of their breach of

contract claim.

*Second*, Plaintiffs' claim against the City for breach of the implied

covenant of good faith and fair dealing must also be dismissed.  As stated

above, under New York law, a covenant of good faith and fair dealing inheres in

all contracts.  *Phoenix Cos., Inc.*, 554 F. Supp. 3d at 587 (citing *511 W. 232nd

Owners Corp.*, 98 N.Y.2d at 153).  "Where there is no agreement, however,

there can be no implied duty to act."  *Bibicheff* v. *PayPal, Inc.*, No. 17 Civ. 4679

(DRH) (AYS), 2020 WL 2113373, at *5 (E.D.N.Y. May 4, 2020) (internal citations

40

omitted), *aff'd*, 844 F. App'x 394 (2d Cir. 2021) (summary order); *accord Banco Espirito Santo de Investimento, S.A.* v. *Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *5 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004) (summary order).

*Third* and finally, the Court addresses Plaintiffs' promissory estoppel claim.  As stated above, "to state a claim for promissory estoppel under New York law, Plaintiff must allege: '[i] a sufficiently clear and unambiguous promise; [ii] reasonable reliance on the promise; and [iii] injury caused by the reliance[.]'"  *Barker*, 2022 WL 595954, at *14.  "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel; the alleged promise must be clear and unambiguous."  *Id.*

Plaintiffs allege that (i) Defendants, through their respective agreements, promised to cover the costs of services covered by the Plan; (ii) Plaintiffs relied on Defendants' promises and did not seek alternative employment or insurance coverage; and (iii) Defendants did not honor their promises to cover the costs of D's treatments in a meaningful way.  (SAC ¶¶ 39-41).  As with their promissory estoppel claim against the GHI Defendants, Plaintiffs fail to allege that the City Defendants made any promise to them concerning the amounts the Plan would pay for services rendered by Brainbuilders, let alone a clear and unambiguous promise upon which Plaintiffs allegedly relied.  As before, "[a] complaint does not suffice 'if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Cambridge Cap. LLC*, 565 F. Supp. 3d at 458 (quoting *Iqbal*,

556 U.S. at 678).  Accordingly, the Court dismisses Plaintiffs' promissory estoppel claim as to the City Defendants.

**D.      The Court Dismisses Plaintiffs' Claim for Declaratory Relief**

Lastly, Plaintiffs seek a declaratory judgment, presumably under the Declaratory Judgment Act, 28 U.S.C. § 2201, that Plaintiffs are entitled to full reimbursement from Defendants for D's ABA treatment going forward.  (SAC ¶ 53).  The Declaratory Judgment Act provides the procedural mechanism for granting declaratory relief in federal diversity cases.  *Obra Pia Ltd.* v. *Seagrape Invs. LLC*, No. 19 Civ 7840 (RA), 2020 WL 5751195, at *17 (S.D.N.Y. Sept. 25, 2020) (citing *Am. Standard, Inc.* v. *Oakfabco, Inc.*, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007)), *appeal dismissed* (June 17, 2021), *motion for relief from judgment denied*, No. 19 Civ 7840 (RA), 2021 WL 1978545 (S.D.N.Y. May 18, 2021).  "It does not, however, provide an independent cause of action."  *Id.* (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993)) (internal quotation marks omitted).  Rather, the Act provides "a form of relief previously unavailable," such that "a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief."  *Id.* (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d at 731); *see also Trodale Holdings LLC* v. *Bristol Healthcare Invs., L.P.*, No. 16 Civ. 4254 (KPF), 2017 WL 5905574, at *11 (S.D.N.Y. Nov. 29, 2017) ("Plaintiff cannot sustain an independent cause of action for a declaratory judgment.  A declaratory judgment is a remedy, not a cause of action.").  Where, as here, a plaintiff's substantive claims are dismissed, a standalone claim for a

declaratory judgment is properly dismissed as well.  *See, e.g., Obra Pia Ltd.*, 2020 WL 5751195, at *17 (dismissing cause of action for declaratory judgment because plaintiffs' substantive claims had been dismissed); *Xiaolu Peter Yu* v. *Vassar Coll.*, 97 F. Supp. 3d 448, 484 (S.D.N.Y. 2015) ("Given that Yu has failed to establish his other claims, and the declaratory relief sought rests on those claims, his claim for declaratory judgment also fails."); *KM Enters., Inc.* v. *McDonald*, No. 11 Civ. 5098 (ADS) (ETB), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012) ("As to the only remaining causes of action in the Amended Complaint — namely, the counts for a 'declaratory judgment' and an 'injunction' — the Plaintiff cannot survive a motion to dismiss by relying on these claims as independent causes of action."), *aff'd*, 518 F. App'x 12 (2d Cir. 2013) (summary order).

## E.   The Court Denies Leave to Amend

Lastly, the Court considers whether to grant Plaintiffs leave to file an amended complaint.  Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

While leave to amend is freely granted under Rule 15, it is "within the sound discretion of the district court to grant or deny leave to amend."  *Broidy Cap. Mgmt. LLC* v. *Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).  Leave may be denied where the proposed amendment would be futile. *See Olson* v. *Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020).  Amendment is

futile if the "amended portion of the complaint would fail to state a cause of action." *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (finding amendment not futile where amended complaint would be "sufficient to withstand a motion to dismiss"); *Pompey-Primus* v. *Success Acad. Charter Sch., Inc.*, No. 21 Civ. 3981 (KPF), 2022 WL 504541, at *10 (S.D.N.Y. Feb. 17, 2022) (denying leave to amend where plaintiff did not amend her pleading or request leave to do so, and amendment would have been futile). Here, Plaintiffs have already taken advantage of two opportunities to amend their complaint, including after Defendants filed motions to dismiss in the District of New Jersey, raising the very arguments that the Court has found to be dispositive here.  (Dkt. #11, Ex. 5; Dkt. #13, Ex. 5).  Relatedly, Plaintiffs have not identified any amendments that would alter the Court's analysis, and their prior failures to correct the deficiencies in the pleadings suggest that they are unlikely to be able to do so.  Accordingly, the Court finds that amendment would be futile and denies Plaintiffs leave to amend.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and Plaintiffs' claims are dismissed.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      August 8, 2022
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge