Yaakov Pollak, Esq. (5597893)
55 Rena Lane
Lakewood, NJ 08701
Telephone: (732) 833-3421
Email: ypollak@nbyjlaw.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRAINBUILDERS LLC, and H and D, by their Attorney-in-Fact, RACHEL SOROTOZKIN, <br><br> Plaintiffs, <br><br> vs. <br><br> EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED, THE CITY OF NEW YORK, NEW YORK CITY OFFICE OF LABOR RELATIONS, and NEW YORK CITY DEPARTMENT OF EDUCATION, <br><br> Defendants. | Civil Action No.: 1:21-cv-04627-KPF <br><br><br><br> NOTICE OF MOTION FOR RECONSIDERATION |

`**PLEASE TAKE NOTICE** that plaintiffs H and D, by their Attorney-in-Fact, Rachel Sorotozkin ("Plaintiff"), by their attorney Yaakov Pollak, Esq., will move this Court, before the Honorable Katherine Polk Failla, United States District Judge, at the United States District Court of the Southern District of New York, located at 40 Foley Square, New York, New York, 10007, for an Order, pursuant to Local Rule 6.3, reconsidering part of its Opinion and Order dated August 8, 2022, dismissing Plaintiff's Second Amended Complaint.

**PLEASE TAKE FURTHER NOTICE** that, in support of the motion, Plaintiff relies upon the Memorandum of Law.

Dated August 22, 2022

___/s/ Yaakov Pollak_____
Yaakov Pollak, Esq.
55 Rena Lane

Lakewood, New Jersey 08701
(732) 833-3421
ypollak@nbyjlaw.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRAINBUILDERS LLC, and H and D, by their Attorney-in-Fact, RACHEL SOROTOZKIN,<br><br>        Plaintiffs,<br>vs.<br><br>EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED, THE CITY OF NEW YORK, NEW YORK CITY OFFICE OF LABOR RELATIONS, and NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>        Defendants. | Civil Action No.: 1:21-cv-04627-KPF |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S DISMISSAL OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

---

On the Brief:
Yaakov Pollak, Esq. (5597893)
55 Rena Lane
Lakewood, NJ 08701
Telephone: (732) 833-3421
Email: ypollak@nbyjlaw.com
*Attorney for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT AND BACKGROUND ........................................................1

LEGAL ARGUMENT ............................................................................................................3

   I.     RECONSIDERATION IS PROPER BECAUSE THE COURT OVERLOOKED
   THE CASE LAW THAT BREACH OF THE COVENANT OF GOOD FAITH CAN BE
   PLED AS AN ALTERNATIVE TO ORDINARY BREACH ...............................................3

     a.   Reconsideration is proper where, as here, there is a need to correct a clear error and
     prevent a manifest injustice. ............................................................................................3

     b.   In New York, where the meaning of a contract is disputed, a plaintiff may claim
     both ordinary breach of contract and breach of the implied covenant of good faith and
     fair dealing. .....................................................................................................................3

     c.   The Court should rule definitively that the suit was properly commenced for the
     benefit of H and D. ..........................................................................................................5

     d.   If necessary, Plaintiffs should be given the opportunity to amend their complaint to
     clarify the Good Faith Claim and for whose benefit the lawsuit was commenced. ...........6

CONCLUSION .......................................................................................................................6

## **TABLE OF AUTHORITIES**

**Cases**

*Courtien Communications, Ltd. v. Aetna Life Ins.*, 193 F. Supp. 2d 563, 571 (S.D.N.Y. 2002) ....................................................................................................................................4

*Doe v. New York City Dept. of Social Services*, 709 F.2d 782, 789 (2nd Cir. 1983) .................3

*Deutsche Bank Securities Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) ............4

*E\*Trade Financial Corp. v. Deutsche Bank AG*, 2008 WL 2428225, 26 (S.D.N.Y. 2008)......5

*Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 2667(LMM), 2008 WL 4866054, at \*7 (S.D.N.Y. Nov. 6, 2008)....................................................................................................................5

*Hard Rock Cafe Intern. v. Hard Rock Hotel Holdings*, 808 F. Supp. 4 552, 567 (S.D.N.Y. 2011).................................................................................................................................4, 5

*Leki Aviation A/S v. B/E Aerospace, Inc.*, 2013 NY Slip Op 31318(U), ¶¶ 10-11 ...................5

*Phoenix Co., Inc. V. Concentrix Ins. Admin. Sols.*, 554 F. Supp. 3d 568, 587 (S.D.N.Y. 2021) ....................................................................................................................................4

*Raglan Realty Corp. v. Tudor Hotel Corp.*, 149 A.D.2d 373, 375 (App. Div. 1st Dept. 1989) 5

**Rules**

Local Rule 6.3 .............................................................................................................................3

## PRELIMINARY STATEMENT AND BACKGROUND

Plaintiffs, H and D through their attorney-in-fact, Rachel Sorotzkin ("Plaintiffs"), brought this action to recover health benefits due to them under a health insurance policy (the "Plan") offered by EmblemHealth, Inc. and Group Health Incorporated (collectively, "Emblem") to employees of the City of New York.  H, a City of New York employee, is a participant in the Plan, and D is a qualified dependent therein.

D is being treated with applied behavioral analysis ("ABA") Brainbuilders, LLC ("Brainbuilders") for his autism spectrum disorder ("ASD").  Despite Emblem's undeniable obligation to cover the treatment, Emblem has only covered an insubstantial portion of the treatment, and Plaintiffs filed this action to recover their rightful benefits (the "SAC").  *See* ECF Doc. 34 and attached hereto as Exhibit A.

On September 10, 2021, Emblem filed a motion to dismiss each of Plaintiffs' causes of action in its SAC (ECF Docs. No. 47–50), and on August 8, 2022, the Court issued an Opinion and Order granting the dismissal of the SAC in its entirety (the "Dismissal") (ECF Doc. No. 56 and attached hereto as Exhibit B).

Plaintiffs now ask the Court to reconsider in part the Dismissal.  Specifically, Plaintiffs move the Court to reconsider its position on the SAC's second cause of action—breach of the covenant of good faith and fair dealing (the "Good Faith Claim")—that the Court dismissed as duplicative of the claim for ordinary breach of contract, which was dismissed as well.  The quasi-contract claim was properly pleaded in the alternative, and as illustrated by the Court's dismissal of the ordinary breach claim, was necessary for instances such as this one where the

Court held that there is no "specific contractual provision" that was "purportedly breached." *See* Dismissal B(2).

In their response to the Motion to Dismiss, Plaintiffs argued that it was incongruous for Emblem to argue simultaneously for the dismissal of the ordinary breach claim for the lack of a specific provision and the dismissal of the Good Faith Claim as duplicative. Plaintiffs believed that "duplication," was impossible of a dismissed claim. Although, Plaintiffs did not previously cite to any authority, the case law does, if fact, support Plaintiffs' position, and the same will be set forth below.

The implied covenant of good faith and fair dealing was intended for these circumstances. Plaintiffs purchased and relied upon the Plan to cover their medical expenses. Nevertheless, Emblem ignored the purpose of insurance coverage and paid only a small fraction of the bill. Even if Emblem is in technical compliance with the provisions of the Plan, they are in breach of the reasonable expectations of Plaintiffs. The unavailability of claims for both ordinary breach and breach of the covenant of good faith would mean that an insurance company can escape accountability for paying even a single dollar for an expensive treatment.

At the very least, Plaintiffs should be given the opportunity to amend their complaint to clarify the Good Faith Claim. D cannot receive effective ABA therapy without insurance coverage, and his future depends on it.

In addition to the Good Faith Claim, Plaintiffs ask the Court to rule definitively in their favor concerning Rochel Sorotzkin's power of attorney. Emblem's assertion that the parties

were improper comes down to several phrases in the SAC that were misinterpreted and their

arguments should be rejected.

## LEGAL ARGUMENT

**I.   RECONSIDERATION IS PROPER BECAUSE THE COURT OVERLOOKED THE CASE LAW THAT BREACH OF THE COVENANT OF GOOD FAITH CAN BE PLED AS AN ALTERNATIVE TO ORDINARY BREACH.**

   ***a.   Reconsideration is proper where, as here, there is a need to correct a clear error and prevent a manifest injustice.***

Pursuant to Local Rule 6.3, a party can move for reconsideration or reargument of a

court order withing fourteen days of the entry of the determination of the original order.  "The

major grounds justifying reconsideration are an intervening change of controlling law, the

availability of new evidence, or the need to correct a clear error or prevent manifest injustice."

*Doe v. New York City Dept. of Social Services*, 709 F.2d 782, 789 (2nd Cir. 1983) (internal

citation and quotation marks omitted).  Accordingly, the Court should reconsider its decision

concerning the Good Faith Claim against Emblem, which was properly pled under New York

law.

   ***b.   In New York, where the meaning of a contract is disputed, a plaintiff may claim both ordinary breach of contract and breach of the implied covenant of good faith and fair dealing.***

The law in New York is clear; a plaintiff may assert a claim for ordinary breach of

contract, and, simultaneously, claim for breach of the covenant of good faith and fair dealing

in the alternative.  Accordingly, Plaintiffs' second cause of action was proper and should not

have been dismissed.  At a minimum, Plaintiffs should have been given the opportunity the

amend their complaint to clarify the role of the Good Faith Claim.

The Court wrote:

> Plaintiffs' breach of contract and breach of implied covenant claims are predicated on the same allegations that Defendants covered only a small fraction of the cost of D's treatments. Accordingly, the Court dismisses the implied covenant claim as duplicative of Plaintiffs' breach of contract claim.

Dismissal B(2).  In support of its decision, the Court cited to *Phoenix Co., Inc. V. Concentrix Ins. Admin. Sols.*, 554 F. Supp. 3d 568, 587 (S.D.N.Y. 2021), which, in turn, relies upon *Deutsche Bank Securities Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008).  However, in those cases the claim for ordinary breach was not dismissed, and the claims for breach of the covenant of good faith were truly "redundant."  *See id.*  Here, on the other hand, the ordinary breach claim was dismissed, leaving the Good Faith Claim to play the role for which it was designed.

"The law in New York is that a party may assert causes of action in both breach of contract and quasi-contract where there is a bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue." *Courtien Communications, Ltd. v. Aetna Life Ins.*, 193 F. Supp. 2d 563, 571 (S.D.N.Y. 2002) (internal citations and quotation marks omitted).  "Where the existence or meaning of a contract is in doubt, a party may plead a claim for breach of the covenant of good faith and fair dealing in the alternative. *Hard Rock Cafe Intern. v. Hard Rock Hotel Holdings*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011) (internal citation and quotation marks omitted).  "Alternative pleading is permitted because [a] party is only precluded from recovering on both theories at the same time." *Id.* (internal citation and quotation marks omitted).  "On a summary judgment motion where the contract meaning is yet to be determined, a party can continue in both a claim for breach of contract and one for breach of the covenant of good faith and fair dealing." *Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ.

2667(LMM), 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008) (citing *E*Trade Financial Corp. v. Deutsche Bank AG*, 2008 WL 2428225, 26 (S.D.N.Y. 2008)).

As the above authorities confirm, Plaintiffs were correct to plead the Good Faith Claim in the alternative. "It is well established that a party may plead alternative theories, even on the basis of allegations that contradict each other." *Raglan Realty Corp. v. Tudor Hotel Corp.*, 149 A.D.2d 373, 375 (App. Div. 1st Dept. 1989). Moreover, plaintiffs are not required to state that they are pleading "in the alternative" in their complaint. *Leki Aviation A/S v. B/E Aerospace, Inc.*, 2013 NY Slip Op 31318(U), ¶¶ 10-11. Similarly, like in some of the cases cited above, the fact that the Good Faith Claim is based on the same factual predicate as the ordinary breach claim does not detract from the legitimacy of the claim. *See, e.g.*, *Hard Rock Cafe Intern.*, 808 F. Supp. 2d at 567; *Fantozzi*, 2008 WL 4866054, at *7.

      **c.**    ***The Court should rule definitively that the suit was properly commenced for the benefit of H and D.***

The SAC does not contain any language indicating that the suit was commenced for anyone but the Members. Emblem's argument to the contrary is based on phrases lifted wholly out of context.

The Court wrote that "the fact that Plaintiffs commenced this lawsuit 'for the benefit of Brainbuilders' would seem to counsel in favor of dismissing all of Plaintiffs' claims against the GHI Defendants. Dismissal B(1)(b). However, the SAC does not say that the *lawsuit* was commenced "for the benefit of Brainbuilders," it merely says that that there was assignment "for the benefit of Brainbuilders," and acknowledges that such assignment is irrelevant with regard to Emblem.[1] *See* SAC ¶1. The SAC merely characterizes the assignment that it was

---

[1] In context, the SAC reads as follows: H, on behalf of herself and on behalf of her minor child, D. executed an assignment of benefits and an assignment of the right to pursue legal and administrative remedies under their

"for the benefit of Brainbuilders," but, regarding the power-of-attorney, there is no language to that effect, and most definitely does not say that the lawsuit was commenced for its benefit.

> **d.    If necessary, Plaintiffs should be given the opportunity to amend their complaint to clarify the Good Faith Claim and for whose benefit the lawsuit was commenced.**

The Court denied Plaintiff the opportunity to further amend their complaint on the grounds of futility.  Dismissal E.  However, such an opportunity would not be futile concerning potential deficiencies in the Good Faith Claim or the identification of the beneficiary of a judgment.  Plaintiffs can without difficulty amend their complaint to elucidate the difference between the ordinary breach claim and the Good Faith Claim and the beneficiary of a future judgment.  Plaintiffs did not previously find it necessary to make those amendments, but, to the extent necessary, Plaintiffs should now be given that opportunity.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff asks the Court to grant Plaintiffs' motion for reconsideration and reinstate the action against Emblem.

Respectfully Submitted,

___/s/ Yaakov Pollak_____
Yaakov Pollak, Esq.
55 Rena Lane
Lakewood, New Jersey 08701
(732) 833-3421
ypollak@nbyjlaw.com
*Attorney for Plaintiffs*

---

health insurance plan for the benefit of Brainbuilders, which assignment is valid at least as it pertains to NYC Defendants (hereinafter defined) (document will be made available upon request). SAC ¶1.

# Exhibit A

Yaakov Pollak, Esq. (236842017)
**BURTON JACOBOVITCH LAW GROUP LLC**
500 River Avenue, Suite 215
Lakewood, New Jersey 08701
(732) 806-8181
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BRAINBUILDERS LLC, and H and D, by their Attorney-in-Fact, ROCHEL SOROTZKIN, | Civil Action No.: 3:20-cv-12703-FLW-TJB |
| Plaintiffs, | |
| vs. | |
| EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED, THE CITY OF NEW YORK, NEW YORK CITY OFFICE OF LABOR RELATIONS, and NEW YORK CITY DEPARTMENT OF EDUCATION, | **AMENDED COMPLAINT** |
| Defendants. | |

Plaintiffs Brainbuilders LLC, and H, and D, by their Attorney-in-Fact, Rochel Sorotzkin, brings this action by way of Complaint, and in support thereof aver as follows:

## PARTIES

1.      Brainbuilders LLC ("Brainbuilders"), a New Jersey limited liability company, is a therapeutic intervention agency located at 945 River Ave., Suite 201, Lakewood, New Jersey 08701 that provides services to children with autism spectrum related disorders ("ASDs"). These services include applied behavioral analysis ("ABA"), physical therapy, occupational therapy, and speech therapy.    H, on behalf of herself and on behalf of her minor child, D. (collectively, "Plaintiff" and together with Brainbuilders, "Plaintiffs") executed an assignment of benefits and

an assignment of the right to pursue legal and administrative remedies under their health insurance plan for the benefit of Brainbuilders, which assignment is valid at least as it pertains to NYC Defendants (hereinafter defined) (document will be made available upon request).

2.      H, on behalf of herself and on behalf of her minor child, D, appointed Rochel Sorotzkin, residing at 780 Albert Avenue, Lakewood, New Jersey, as their attorney-in-fact, with authority to pursue all legal and administrative remedies under their health insurance plan (document will be made available upon request).

3.      Upon information and belief, defendant EmblemHealth, Inc. is a New York corporation, with its principal place of business located at 55 Water Street, Suite CONC1, New York, New York 10041, is the parent of defendant GHI (hereinafter defined) and has its name and logo featured on plans that are offered by GHI.

4.      Upon information and belief, Group Health Incorporated ("GHI," and, together with EmblemHealth, Inc., "Defendants") is a New York corporation, with its principal place of business located at 441 Ninth Avenue New York, NY 10001.

5.      Defendant City of New York ("NYC"), is the employer of H, and accepts service at its Corporation Counsel, located at 100 Church Street, New York, NY 10007.

6.      Defendant New York City Office of Labor Relations, located at 22 Cortlandt St floor 12-14, New York, NY 10007 ("OLR"), is a subdivision of defendant NYC and administers the NYC Health Benefits Program, of which the Plan (herein defined) is part.

7.      Defendant New York City Department of Education, located at 52 Chambers Street, New York, NY 10007 ("DOE" and, together with NYC and OLR, the "NYC Defendants"), is a subdivision of defendant NYC and is the direct employer of H.

## JURISDICTION AND VENUE

8.     Jurisdiction and venue are proper in this court because Defendants have specifically directed their dealings and conduct that give rise to this Action at a resident of this County.

## FACTUAL BACKGROUND

9.     D is a fourteen-year-old adolescent who has been diagnosed with autism spectrum disorder ("ASD") and was and is being treated for such disorder by the dedicated staff of Brainbuilders from May of 2017 to the present.

10.     H, D's mother, is a NYC and DOE Employee.

11.     Pursuant to an agreement between DOE and United Federation of Teachers (UTF), of which H is a member, DOE committed "to arrange for, and make available to each day school teacher, a choice of health and hospital insurance coverage from among designated plans" (the "Commitment").

12.     By its nature, "insurance coverage" is only worthy of being characterized as such if it, in fact, covers and protects against the costs of the services covered therein.  To the extent a plan does not alleviate a substantial part of the burden of such costs, it is not "insurance coverage."

13.     In line with the Commitment, DOE employees, like all NYC employees, are offered a choice of healthcare plans.

14.     H has chosen and is insured by the GHI Comprehensive Benefit Plan (the "Plan"), a policy created by defendants GHI and NYC Defendants for NYC employees, and under which D is covered as a qualified dependent.

15.     Insurance companies typically contract with healthcare providers to participate in their provider network and treat their members for negotiated and discounted rates.  The insurance companies then offer their customers two options: policies that only cover in-network services, and those that include out-of-network ("OON") services as well.  In exchange for the expanded

options, insurance companies typically charge substantially higher premiums for policies that cover OON services.

16.     The Plan includes OON services, a privilege that GHI agreed to in advance and is well compensated for.

17.     ABA is the single most effective and widely practiced treatment for individuals diagnosed with an ASD.  For most such individuals, ABA represents the only hope that they will grow up to lead independent and meaningful lives.

18.     In the State of New York, GHI, like all insurance companies, is required to provide coverage for the screening, diagnosis, and treatment of ASDs, including, but not limited to, ABA. See NY Ins L § 3221 (l)(17)(A).

19.     Accordingly, as set forth in a Rider to the Plan's Certificate of Insurance, the Plan includes coverage for ABA.

20.     D was diagnosed with an ASD in 2009, and since May of 2017, he has been receiving ABA and other services from Brainbuilders, with very positive results.

21.     Except for a short period in the beginning of 2019, GHI has been paying Brainbuilders approximately 6% of its billed amount for D's ABA.  Six-percent is well below Brainbuilders' cost, forcing it to "balance bill" D's caregivers for the rest.  Meaning, despite its obligation to do so, the Plan fails to cover ABA in any meaningful sense.

22.     Per the Plan documents, the amounts that GHI will reimburse for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York."  By implication, the failure to provide reasonable reimbursement was the result of a concerted effort on the part of GHI and NYC Defendants to shortchange Plaintiffs.  GHI is in breach of the

agreement with its member, and NYC Defendants are in breach of their commitment to their employee and are complicit in GHI's breach.

23.     Pursuant to a 2014 agreement with the Attorney General of the State of New York, GHI committed to "create a website available to NYC employees and retirees that provides information on how much GHI will reimburse GHI Plan members for particular services obtained from out-of-network providers," (the "AG Order").  See Attorney General of the State of New York, In the Matter of Group Health Incorporated, Assurance No.: 14-181.

24.     In partial compliance with the AG Order, GHI has created a website for its members to seek information on its reimbursement amounts.  However, contrary to the AG Order, there is no reimbursement information available on the website for the CPT/HCPCS codes related to ABA (0359T, 0364T, 0365T, 0368T, 0369T, 0370T, 97151, 97153, 97155, and 97156).

25.     Upon information and belief, the Plan violates the Mental Health Parity and Addiction Equity Act (the "MHPAEA"), which requires that healthcare plans cover mental health services quantitatively and nonquantitatively on par with medical/surgical services.  29 USC § 1185a.

26.     Moreover, per the MHPAEA, which fully applies to grandfathered non-ERISA healthcare plans, GHI was required to make available the reasons for its reimbursement determinations.  See 29 § CFR 2590.712(d).  GHI has not made its reasons available, and to do so would be impossible given the low and arbitrary rate.

27.     Brainbuilders offers a full array of services, including but not limited to center-based group ABA.  Upon information and belief, GHI's designated network is inadequate to satisfy D's treatment specifications.

28.     Plaintiffs have continuously complied with the Plan's internal appeal procedures, despite GHI ignoring many of their appeals, in violation of the Plan's provisions.

29.     The Plan is governed by New York Law.

30.     Within ninety-days of the course of conduct herein, a Notice of Claim was served on behalf of H upon NYC Defendants in accordance with New York's General Municipal Law. More than thirty-days has elapsed since such service, and NYC Defendants have refused to pay said claim or adjust the same.

31.     The egregious nature of Defendants' denial of D's sole lifeline and his only prospect of leading a fulfilling life, in utter disregard of their duties, and their refusal to protect Plaintiffs from the financial consequences of D's autism, warrants the imposition of punitive damages on the basis of claims sounding in either contract or tort.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**BREACH OF CONTRACT**

32.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

33.     Defendants by only covering a small fraction of the costs of D's treatments have breached their respective agreements.

### SECOND CAUSE OF ACTION
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

38.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.   Defendants by only covering a small fraction of the costs of D's treatments have breached the covenant of good faith and fair dealing implied by their respective agreements.

## THIRD CAUSE OF ACTION
## PROMISSORY ESTOPPEL

38.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.   Defendants, through their respective agreements, promised to cover the costs of the services covered by the Plan.

40.   Plaintiffs relied on Defendants' promises and did not accept alternative employment or insurance coverage.

41.   Defendants did not honor their promise to cover the costs of D's treatment in a meaningful way.

## FOURTH CAUSE OF ACTION
## FRAUD

42.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

43.   Defendants, through their respective agreements, misrepresented that they will cover and protect against the costs of healthcare.

44.   Defendants, contrary to their representations, did not intend to truly cover the costs of D's treatments.

## FIFTH CAUSE OF ACTION
## CIVIL CONSPIRACY

45.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

46.      Defendants have conspired and agreed between themselves to deny substantial coverage for D's treatments, which Plaintiffs were entitled to, and together committed the actions alleged herein.

## SIXTH CAUSE OF ACTION
## CIVIL AIDING AND ABETTING

38.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.     Each Defendant aided the other Defendants in the breach of their duties.

## SEVENTH CAUSE OF ACTION
## NEW YORK PROMPT PAY LAW

40.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

41.     New York Insurance Law § 3224-a provides that in the processing of all health care claims and bills from health care providers, any insurer or organization or corporation licensed or certified pursuant to Insurance Law article 43 or Public Health Law article 44 shall pay the bill or claim of a medical provider within 45 days of receipt.

## EIGHTH CAUSE OF ACTION
## NEW YORK CONSUMER PROTECTION LAW

42.      The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

43.     New York General Business Law § 349 provides protection against "[d]eceptive acts or practices in the conduct of any business, trade or commerce  or  in  the furnishing of any service."

44.     Defendants have engaged in actions that violated the foregoing provision.

45.

### NINTH CAUSE OF ACTION
### NEW YORK AUTISM MANDATE

46.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

47.     The State of New York mandates that all health insurance policies cover autism services, including ABA (the "Mandate").

48.     The Plan claims to comply with the Mandate, but its actual reimbursements belie such claim.

### TENTH CAUSE OF ACTION
### DECLARATORY JUDGEMENT

49.      The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

50.     Plaintiffs are entitled to full reimbursement for the treatment of D going forward.

**WHEREFORE**, Plaintiffs demand judgement in their favor against Defendants as follows:

A.     Ordering Defendants to reimburse Plaintiffs for the billed amount for past treatment of D.

B.     Declaring that Plaintiffs are entitled to reimbursement for the billed amount for future treatment of D.

C.      Awarding of reasonable attorney's fees and costs.

D.      Awarding punitive damages.

E.      Awarding all other relief to which Plaintiffs are entitled.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, notice is hereby given that Yaakov Pollak, Esq. is designated as trial counsel in this matter.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO R 4:5-1

I certify that to my knowledge and based on the information available to me at this time, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding and that no additional parties are known at this time who should be added.

Dated: November 9, 2020                    Respectfully submitted,

                                           /s/ Yaakov Pollak
                                           Yaakov Pollak, Esq.
                                           **BURTON JACOBOVITCH LAW GROUP LLC**
                                           500 River Avenue, Suite 215
                                           Lakewood, New Jersey 08701
                                           (732) 806-8181
                                           *Attorneys for Plaintiffs*

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRAINBUILDERS LLC and H and D, by
their Attorney-in-Fact, Rochel Sorotzkin,

                    Plaintiffs,

              -v.-

EMBLEMHEALTH, INC., GROUP HEALTH
INCORPORATED, THE CITY OF NEW
YORK, NEW YORK CITY OFFICE OF
LABOR RELATIONS, and NEW YORK CITY
DEPARTMENT OF EDUCATION,

                    Defendants.

---

21 Civ. 4627 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Brainbuilders LLC ("Brainbuilders") and H, on behalf of herself

and her minor child, D (with H, the "Members"), by the Members' attorney-in-

fact Rochel Sorotzkin (together, "Plaintiffs") bring this action against

EmblemHealth, Inc. ("EmblemHealth"), Group Health Incorporated ("GHI," and

together with EmblemHealth, the "GHI Defendants"), the City of New York (the

"City"), the New York City Office of Labor Relations ("OLR"), and the New York

City Department of Education ("DOE," and together with the City and OLR, the

"City Defendants"), alleging claims against all Defendants for breach of

contract, breach of the implied covenant of good faith and fair dealing,

promissory estoppel, fraud, civil conspiracy, and civil aiding and abetting; and

against the GHI Defendants for violations of various federal and state laws.

The GHI Defendants now move for dismissal of Plaintiffs' Second Amended

Complaint (the "SAC") for lack of standing and for failure to state a claim.  The

City Defendants also move for dismissal on the grounds that (i) OLR is a non-suable entity; (ii) Plaintiffs failed to comply with various statutory prerequisites to suing DOE; (iii) Plaintiffs' tort claims against the City Defendants are untimely; and (iv) Plaintiffs' remaining claims fail to state claims upon which relief can be granted. For the reasons set forth in the remainder of this Opinion, the Court grants both motions to dismiss.

**BACKGROUND**[1]

### A.    Factual Background

Brainbuilders, a New Jersey limited liability company, describes itself as a therapeutic intervention agency that provides services to children with

---

[1]    This Opinion draws its facts from the Second Amended Complaint ("SAC" (Dkt. #34)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion. On a motion to dismiss, a court may consider any statements or documents incorporated by reference in the complaint, documents that are "integral" to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken. *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). A document is integral to the complaint "where the complaint relies heavily upon its terms and effect." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153); *accord United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

For ease of reference, the Court refers to the GHI Defendants' memorandum of law in support of their motion to dismiss as "GHI Br." (Dkt. #50); to the City Defendants' memorandum of law in support of their motion to dismiss as "City Br." (Dkt. #46-5); to Plaintiffs' consolidated brief in opposition to Defendants' motions to dismiss as "Pl. Opp." (Dkt. #51); to the GHI Defendants' reply brief as "GHI Reply" (Dkt. #53); and to the City Defendants' reply brief as "City Reply" (Dkt. #52).

The Court also refers to the Declaration of Scott P. Bridge in support of the City Defendants' motion to dismiss ("Bridge Decl." (Dkt. #46-1)) and the exhibits attached thereto, including H's June 19, 2020 notice of claim (Ex. B) and GHI's denial of appeal (Ex. C); the Declaration of Luz Campos in support of the GHI Defendants' motion to dismiss ("Campos Decl." (Dkt. #48)) and the exhibits attached thereto, including the GHI Comprehensive Benefits Plan (the "Plan" (Ex. B)); the Declaration of Howard S. Wolfson in support of the GHI Defendants' motion to dismiss ("Wolfson Decl." (Dkt. #49)) and the exhibits attached thereto, including the Power of Attorney granted by H to Sorotzkin (Ex. A); and the Declaration of Yaakov Pollak in opposition to Defendants' motion to dismiss ("Pollak Decl." (Dkt. #51-1)) and the exhibits attached thereto, including another copy of the Plan (Ex. A).

autism-spectrum-related disorders, including applied behavioral analysis ("ABA"), physical therapy, occupational therapy, and speech therapy. (SAC ¶ 1). GHI and its parent company, EmblemHealth, are each New York corporations with their principal place of business in New York City. (*Id.* at ¶¶ 3-4). D is a fourteen-year-old adolescent who has been diagnosed with autism spectrum disorder. (*Id.* at ¶ 9). He has been treated by Brainbuilders from May 2017 to the present. (*Id.*). H, D's mother, is employed by DOE. (*Id.* at ¶ 10).

Pursuant to an agreement between DOE and the United Federation of Teachers ("UFT"), of which H is a member, DOE committed "to arrange for, and make available to each day school teacher, a choice of health and hospital insurance coverage from among designated plans[.]" (SAC ¶ 11). In line with this commitment, DOE employees, like all City employees, are offered a choice of healthcare plans. (*Id.* at ¶ 13). H selected the GHI Comprehensive Benefits Plan (the "Plan"), a policy created by GHI and the City Defendants for City employees, and under which D is covered as a qualified dependent. (*Id.* at ¶ 14).

OLR is a subdivision of the City that, among other things, administers the New York City Health Benefits Program, of which the Plan is a part. (SAC ¶ 6). The Plan provides coverage for out-of-network services. (*Id.* at ¶ 16). Premiums for policies that cover out-of-network services are typically substantially higher than premiums for policies that only cover in-network services. (*Id.* at ¶ 15).

In New York State, all health insurance companies are required to provide coverage for the screening, diagnosis, and treatment of autism spectrum disorder.  (SAC ¶ 18 (citing N.Y. Ins. Law § 3221(l)(17)(A))).  Indeed, according to Plaintiffs, a rider to the Plan's Certificate of Insurance confirms that the Plan includes coverage for ABA.  (*Id.* at ¶ 19).  Per the Plan documents, the amounts that GHI will reimburse for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York."  (*Id.* at ¶ 23).  Pursuant to a 2014 agreement with the Attorney General of the State of New York, GHI committed to "create a website available to NYC employees and retirees that provides information on how much GHI will reimburse GHI Plan members for particular services obtained from out-of-network providers."  (*Id.* at ¶ 24 (quoting *In the Matter of Group Health Incorporated*,  Att'y Gen. of the State of N.Y., Assurance No.: 14-181 (available at https://ag.ny.gov/pdfs/AG-GHI_Assurance_No14-181_Fully_Executed.pdf))).  In partial compliance with that agreement, GHI created a website for its members to seek information on its reimbursement amounts.  (*Id.* at ¶ 25).  However, there is no reimbursement information available on the website for the Current Procedural Terminology ("CPT") or Healthcare Common Procedure Coding System ("HCPCS") codes related to ABA.  (*Id.*).

D was diagnosed with autism spectrum disorder in 2009, and since 2017, he has been receiving ABA from Brainbuilders.  (SAC ¶ 21).  According to Plaintiffs, GHI has consistently paid Brainbuilders approximately six percent of the amount Brainbuilders bills for D's ABA, with the exception of a "short

period" in the beginning of 2019, during which time GHI paid approximately 60% of the billed amounts. (*Id.* at ¶ 22; Bridge Decl., Ex. B). As a result, Brainbuilders is forced to bill D's caregivers for the remaining balance. (SAC ¶ 22). Plaintiffs have repeatedly appealed GHI's reimbursement determinations in compliance with the Plan's internal appeal procedures, but GHI has ignored many of their appeals. (*Id.* at ¶ 29).

The SAC states that H, on behalf of herself and on behalf of D, executed an assignment of benefits and an assignment of the right to pursue legal and administrative remedies under the Plan for the benefit of Brainbuilders. (SAC ¶ 1). The SAC also states that H appointed Rochel Sorotzkin as attorney-in-fact for H and D, with authority to pursue all legal and administrative remedies under the Plan. (*Id.* at ¶ 2).

## B.    Procedural Background

On August 18, 2020, Plaintiffs filed an action against Defendants in the Superior Court of the State of New Jersey, Law Division, Monmouth County, captioned *Brainbuilders LLC, and H and D, by their Attorney-in-Fact, Brainbuilders LLC* v. *EmblemHealth, Inc., Group Health Incorporated, The City of New York, New York City Office of Labor Relations and New York City Department of Education*, Docket No. MON-L-002594-20. (Dkt. #1, Ex. 1). On September 15, 2020, Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, and the matter was removed to the United States District Court for the District of New Jersey, where it was assigned to Chief Judge Freda L. Wolfson and Magistrate Judge Tonianne J. Bongiovanni.

5

(Dkt. #1, Ex. 2; Minute Entry for September 15, 2020).  Magistrate Judge Bongiovanni scheduled an initial pretrial conference for October 20, 2020, and granted Defendants an extension to October 21, 2020, to respond to Plaintiffs' Complaint.  (Dkt. #5, 7).

In October of 2020, the GHI Defendants and the City Defendants filed separate motions to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), or, in the alternative, to transfer the case to the United States District Court for the Southern District of New York.  (Dkt. #11 (GHI Defendants' motion to dismiss, filed October 19, 2020), 13 (City Defendants' motion to dismiss, filed October 21, 2020)).  On November 9, 2020, Plaintiffs filed an amended complaint.  (Dkt. #16).  On November 18, 2020, Alvin C. Lin, counsel for the GHI Defendants, filed a letter on behalf of all Defendants, asking the court to deem the pending motions to dismiss to be directed against Plaintiffs' Amended Complaint and to maintain the existing briefing schedule.  (Dkt. #17).  The court granted Defendants' request the following day.  (Dkt. #18).  Plaintiffs filed their opposition brief on December 10, 2020, and Defendants filed their reply brief on January 12, 2021.  (Dkt. #22, 24).  The GHI Defendants filed a notice of supplemental authority on February 25, 2021.  (Dkt. #25).  On May 21, 2021, the court issued an Opinion and Order (i) granting the City Defendants' motion to dismiss for lack of personal jurisdiction, (ii) denying the GHI Defendants' motion to dismiss without prejudice, and (iii) transferring the matter to the Southern District of New York.  (Dkt. #27).

6

The matter was transferred to this District on May 24, 2021, and thereafter was assigned to the undersigned.  On June 4, 2021, the GHI Defendants filed a pre-motion letter seeking a conference to discuss the anticipated renewal of their motion to dismiss.  (Dkt. #32).  On July 13, 2021, Plaintiffs filed the SAC.  (Dkt. #34).

The eleven-page SAC sets forth eleven separate causes of action.  *First*, Plaintiffs allege that by covering only a small fraction of the costs of D's treatments, Defendants have breached their respective agreements.  (SAC ¶ 34).  *Second*, and for the same reason, Plaintiffs allege that Defendants have breached the covenant of good faith and fair dealing inherent in their respective agreements.  (*Id.* at ¶ 39).  *Third,* Plaintiffs allege that Defendants, through their respective agreements, promised to cover the costs of the services covered by the Plan; that Plaintiffs relied on Defendants' promises and did not accept or seek alternative employment or insurance coverage; and that Defendants did not honor their promise to cover the costs of D's treatment in a meaningful way.  (*Id.* at ¶¶ 39-41).  *Fourth*, Plaintiffs allege that Defendants engaged in fraud by misrepresenting that they would cover the costs of healthcare when they did not intend to cover the costs of D's treatments.  (*Id.* at ¶¶ 43-44). *Fifth*, Plaintiffs allege that Defendants have conspired and agreed between and among themselves to deny substantial coverage for D's treatments to which Plaintiffs were entitled.  (*Id.* at ¶ 46).  *Sixth*, Plaintiffs allege that each Defendant aided and abetted the other Defendants in the breach of their

7

agreements.  (*Id.* at 8, ¶ 39).[2]  *Seventh*, Plaintiffs allege that the GHI
Defendants failed to comply with Section 3224-a of the New York Insurance
Law (the "Prompt Pay Law"), which requires insurers to pay the bill or claim of
a medical provider within 45 days of receipt.  (*Id.* at 8-9, ¶¶ 41-42).  *Eighth*,
Plaintiffs allege that the GHI Defendants violated Section 349 of the New York
General Business Law (the "New York Consumer Protection Act"), which
provides protection against "[d]eceptive acts or practices in the conduct of any
business, trade or commerce or in the furnishing of any service."  (*Id.* at 9,
¶¶ 44-45).  *Ninth*, Plaintiffs allege that the GHI Defendants have violated a state
mandate that all health policies cover autism services, including ABA.  (*Id.* at
¶¶ 47-48).  *Tenth*, Plaintiffs allege that the GHI Defendants have violated the
Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"), Pub. L.
No. 110-343, Div. C §§ 511-12, 122 Stat. 3861, 3881 (Oct. 3, 2008), which
requires that healthcare plans cover mental health services on par with
medical and surgical services.  (*Id.* at ¶¶ 50-51).  *Eleventh* and finally, Plaintiffs
seek a declaratory judgment that they are entitled to full reimbursement from
Defendants for the treatment of D going forward.  (*Id.* at ¶ 53).

The day after Plaintiffs filed the SAC, the Court denied as moot
Defendants' request for a pre-motion conference and directed Defendants to
respond to the SAC on or before July 28, 2021.  (Dkt. #35).  On July 28, 2021,

---

[2]    There is a flaw in the numbering of paragraphs in the SAC.  On page 8, paragraph 46 is
followed by paragraph 38, and the numbering continues from 38.  Citations to this
second set of paragraphs numbered 38-46 include the relevant page number.

the GHI Defendants renewed their request for a pre-motion conference regarding their anticipated motion to dismiss.  (Dkt. #37).  That same day, the City Defendants filed their motion to dismiss.  (Dkt. #36).  The following day, the City Defendants filed a pre-motion letter in accordance with the Court's Individual Rules.  (Dkt. #38).

On July 29, 2021, the Court denied the City Defendants' motion to dismiss without prejudice, due to the motion's noncompliance with the Court's Individual Rules, and converted the August 12, 2021 initial pretrial conference into a pre-motion conference.  On August 12, 2021, the Court held a pre-motion conference and set a briefing schedule for the motions to dismiss.  Both the GHI Defendants and the City Defendants filed their opening briefs and supporting documents on September 10, 2021.  (Dkt. #46-50).  Plaintiffs filed their consolidated opposition brief on October 15, 2021.  (Dkt. #51).  Both sets of Defendants filed their reply briefs on October 29, 2021.  (Dkt. #52, 53).  Accordingly, both motions to dismiss are fully briefed and ripe for the Court's consideration.

## DISCUSSION

### A.  Applicable Law

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation

omitted).  "To survive a motion to dismiss, a complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief that is plausible on
its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v.
*Twombly*, 550 U.S. 544, 570 (2007)).  While the plausibility requirement "is not
akin to a 'probability requirement,' … it asks for more than a sheer possibility
that a defendant has acted unlawfully."  *Id.*  Toward that end, a plaintiff must
provide more than "an unadorned, the-defendant-unlawfully-harmed-me
accusation."  *Id.*  Moreover, "[w]here a complaint pleads facts that are 'merely
consistent with' a defendant's liability, it 'stops short of the line between
possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550
U.S. at 557).

**B.     The Court Dismisses Plaintiffs' Claims Against the GHI Defendants**

    **1.     Plaintiffs Lack Standing to Bring Certain Claims Against the
       GHI Defendants**

        **a.     Brainbuilders Lacks Standing to Sue the GHI Defendants**

The Plan contains an unambiguous no-assignment provision, which
reads, "You cannot assign any benefits or monies due from GHI to any person,
corporation or other organization.  Any assignment by you will be void.
Assignment means the transfer to another person or organization of your right
to the services provided or your right to collect from GHI for those services."
(Campos Decl., Ex. B at 36).  The GHI Defendants argue that, given this
provision, Brainbuilders lacks standing to assert a contract claim against the
GHI Defendants.

Under New York Law, "an assignment is valid even where an agreement generally prohibits assignment, *unless* the agreement specifies that an assignment would be invalid or void." *Mosdos Chofetz Chaim, Inc.* v. *RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 226 (S.D.N.Y. 2014) (internal quotation marks and citation omitted) (emphasis added). "As the Second Circuit reasoned when evaluating an anti-assignment clause under New York law, 'only *express* limitations on assignability are enforceable.'" *Au New Haven, LLC* v. *YKK Corp.*, 210 F. Supp. 3d 549, 555 (S.D.N.Y. 2016) (quoting *Pravin Banker Associates, Ltd.* v. *Banco Popular Del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (emphasis in original)). "'[I]t has been consistently held that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments.'" *Mosdos Chofetz Chaim, Inc.*, 14 F. Supp. 3d at 226 (quoting *Sullivan* v. *Int'l Fid. Ins. Co.*, 465 N.Y.S.2d 235, 237 (2d Dep't 1983)).

The anti-assignment clause at issue in this case contains a definite declaration of the invalidity of an assignment, as it provides that "[a]ny assignment by you will be void." (Campos Decl., Ex. B at 36). *See Renfrew Ctr.* v. *Blue Cross & Blue Shield of Cent. N.Y., Inc.*, No. 94 Civ. 1527 (RSP) (GJD), 1997 WL 204309, at *5 (N.D.N.Y. Apr. 10, 1997) (finding assignment to be invalid where anti-assignment provision explicitly stated that any assignments would be "void"); *cf. Semente* v. *Empire Healthchoice Assurance, Inc.*, 147 F. Supp. 3d 117, 121 (E.D.N.Y. 2015), *on reconsideration*, No. 14 Civ. 5823 (DRH) (SIL), 2016 WL 4621076 (E.D.N.Y. Sept. 6, 2016) (concluding that assignment

11

was permitted where "[t]he anti-assignment clause at issue [did] not contain a definite declaration of the invalidity of an assignment"); *Mosdos Chofetz Chaim, Inc.*, 14 F. Supp. 3d at 227 (finding assignment to be valid where plaintiff "failed to identify any [] language in this or any other agreement that specifically invalidates or prohibits an assignment"); *Sullivan*, 465 N.Y.S.3d at 237 (finding assignment to be permitted where contract "contained no provision that the assignment [of benefits] should be void, nor does it provide that an assignee would acquire no rights by reason of any such assignment, nor [does] it provide that the contractor shall not be required to recognize or accept any such assignment").  Because any purported assignment of the Members' claims to Brainbuilders is void, the Court dismisses Brainbuilders' claims against the GHI Defendants.

> ### b.   The Members Have Standing to Sue the GHI Defendants for Their Own Benefit

An assignment of a cause of action is, of course, analytically different from a power of attorney, such as the one granted by H to Rochel Sorotzkin.[3] "A provision by which one person grants another the power to sue on and collect on a claim confers on the grantee a power of attorney with respect to that claim." *Advanced Magnetics, Inc.* v. *Bayfront Partners Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997) (citing *Spencer* v. *Standard Chems. & Metals Corp.*, 237

---

[3]    In the original Complaint, Brainbuilders (but not Sorotzkin) alleged that it was relying upon an assignment of benefits from the Members and acting as the Members' attorney-in-fact.  (Dkt. #1, Ex. 1 at 2).  However, after Defendants removed the action to federal court, Brainbuilders filed an amended complaint replacing Brainbuilders with Sorotzkin as the Members' attorney-in-fact, "to avoid having to defend Brainbuilders' status as a valid attorney-in-fact, unnecessarily[.]"  (Dkt. #19 at 2 n.1).

N.Y. 479, 482 (1924)).  "The grant of a power of attorney … is *not* the equivalent

of an assignment of ownership."  *W.R. Huff Asset Mgmt. Co., LLC* v. *Deloitte &*

*Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (quoting *Advanced Magnetics,*

*Inc.*, 106 F.3d at 17-18) (emphasis added).  Therefore, the no-assignment

provision does not bar Sorotzkin from bringing suit on behalf of H and D.

It is true, as the GHI Defendants argue, that the power of attorney does

not grant standing to Brainbuilders or to Sorotzkin to sue the GHI Defendants

in their own names.  (*See* GHI Br. 9).  "[A] power of attorney to sue, standing

alone, does *not* under the New York law operate as an assignment to vest the

attorney with such title or interest as will enable him to maintain the suit in

his own name."  *Titus* v. *Wallick*, 306 U.S. 282, 289 (1939) (emphasis added)

(citing *Spencer*, 237 N.Y. 479); *accord Raymond A. Semente, D.C., P.C.* v. *Empire*

*Healthchoice Assurance, Inc.*, No. 14 Civ. 5823 (DRH) (SIL), 2021 WL 796613

(E.D.N.Y. Mar. 2, 2021) (holding that patient's power of attorney did not grant

standing to out-of-network medical service provider to bring claims against

insurer in provider's own name).  Sorotzkin does not, however, bring any

claims in her own name.[4]  Instead, she purports to bring her claims as an

"attorney-in-fact" in a representative capacity on behalf of H and D, who

Sorotzkin alleges executed a power of attorney in her favor regarding any legal

claims that they maintain in connection with the Plan.

---

[4]    As discussed in greater detail below, the GHI Defendants accuse Sorotzkin of suing for
her own benefit as one of Brainbuilders' two owners.  (GHI Br. 2, 5; Wolfson Decl., Ex. B
at 3).  However, Paragraph 1 of the SAC defines "Plaintiffs" to include H, D, and
Brainbuilders, and does *not* include Sorotzkin.  (SAC ¶ 1).

Depending on the specific powers granted, a grant of a power of attorney may entitle the holder to bring a lawsuit in the name of the grantor. *Dennis* v. *JPMorgan Chase & Co.*, 342 F. Supp. 3d 404, 413 (S.D.N.Y. 2018). Indeed, Sorotzkin's power of attorney specifically authorizes her "[t]o pursue, institute, settle, appeal or terminate any claims, litigation or administrative proceedings related to the collection of monies or other property owed to me and/or my dependent under any insurance policy or benefit plan[.]" (Wolfson Decl., Ex. A at 2). That said, the grant of a power of attorney must be valid in order for it to confer standing upon an attorney-in-fact acting as the legal representative of a third party. The GHI Defendants argue that the power of attorney executed by the Members in favor of Sorotzkin is deficient under New Jersey law because it does not have a subscribing witness as required by New Jersey Statutes Annotated Sections 46:2B-8.9 and 46:14-2.1(b). (GHI Br. 10 (citing Wolfson Decl., Ex. A at 3 (providing that the power of attorney "shall be governed by and interpreted in accordance with the laws of New Jersey"))).

Under New Jersey law, "[a] power of attorney must be in writing, duly signed and acknowledged in the manner set forth in R.S. 46:14-2.1." N.J. Stat. Ann. § 46:2B-8.9. The GHI Defendants argue that in order for a power of attorney to be "acknowledged in the manner set forth in R.S. 46:14-2.1," a subscribing witness must appear before a notary public, and the notary public must sign a certificate stating that the witness personally appeared before the notary public. (GHI Br. 10 (citing N.J. Stat. Ann. § 46:14-2.1(b))). Here, the notary, Elizabeth Mehling, doubled as the subscribing witness, a fact that the

14

GHI Defendants claim invalidates the power of attorney under New Jersey law. (*See id.*).  However, the "subscribing witness" requirement to which the GHI Defendants refer is found in New Jersey Statutes Annotated § 46:14-2.1(b), which details the requirements to "prove" a written instrument.  Subsection (a) outlines the requirements to "acknowledge" a written instrument, and that subsection does *not* require a subscribing witness to appear.  N.J. Stat. § 46:14-2.1(a).  Therefore, the Court finds that the power of attorney in favor of Rochel Sorotzkin is valid under New Jersey law.[5]

Undeterred, the GHI Defendants argue that Sorotzkin must still be barred from bringing this lawsuit, because paragraph 1 of the SAC expressly alleges that this action was commenced "for the benefit of Brainbuilders."  (GHI Reply 1 (quoting SAC ¶ 1)).  The GHI Defendants also observe that the SAC does not allege that any recovery will be given to H or D.  (*Id.*).  Further, in their prayer for relief, Plaintiffs ask the Court to order Defendants "to reimburse

---

[5]     The GHI Defendants correctly note that although the power of attorney purportedly was executed within the State of New York, it does not meet the requirements of New York General Obligations Law § 5-1501B, which requires a power of attorney to be signed by the principal's purported agent (here, Sorotzkin).  N.Y. Gen. Oblig. Law § 5-1501B(c).  Further, it does not contain the statutory language required by Section 5-1501B(d)(1) ("Caution to the Principal") and Section 5-1501B(d)(2) ("Important Information for the Agent").  For these reasons, the power of attorney would be considered ineffective under New York law.  *See Berrian* v. *Siena Coll.*, 12 N.Y.S.3d 240 (2d Dep't 2015) (finding power of attorney invalid because of absence of required language and dismissing case for lack of standing).  However, the power of attorney provides that it "shall be governed by and interpreted in accordance with the laws of the State of New Jersey."  (Wolfson Decl., Ex. A at 4).  "A choice of law provision in a contract governs disputes about the 'existence or validity of that contract.'"  *Gallo* v. *Inter-Con Sec. Sys. Inc.*, No. 20 Civ. 4879 (KPF), 2021 WL 3913539, at *5 n.6 (S.D.N.Y. Sept. 1, 2021) (citing *Lisa Cooley, LLC* v. *Native, S.A.*, No. 20 Civ. 5800 (VEC), 2021 WL 860591, at *2 (S.D.N.Y. Mar. 5, 2021); *Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 50 (2d Cir. 2004)).

Plaintiffs for the billed amount for past treatment of D," but there is no indication that H has paid the billed amount, such that she would be the party reimbursed for those costs.  (SAC ¶ 53).

Standing to assert a claim for the benefit of the attorney-in-fact can only be conferred by a valid assignment of the claim.  *See W.R. Huff Asset Mgmt. Co., LLC* v, 549 F.3d at 108 (observing that "an assignment of claims transfers legal title or ownership of those claims," while a power of attorney does not). As the power of attorney does not purport to grant Sorotzkin or Brainbuilders legal or equitable title in the Members' claims — nor could it, without running afoul of the Plan's no-assignment provision — neither Sorotzkin nor Brainbuilders has standing to assert the Members' claims for the benefit of Brainbuilders.  Accordingly, the fact that Plaintiffs commenced this lawsuit "for the benefit of Brainbuilders" would seem to counsel in favor of dismissing all of Plaintiffs' claims against the GHI Defendants.  However, the Court need not make that determination, because even interpreting this lawsuit as validly commenced on behalf of and for the sole benefit of the Members, the Court must dismiss the Members' claims against the GHI Defendants for the reasons that follow.

### 2.   Plaintiffs' Contract and Quasi-Contract Claims Against the GHI Defendants Fail to State a Claim

Plaintiffs allege claims against the GHI Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.  The Court considers each claim in turn.

*First*, the Court addresses Plaintiffs' breach of contract claim.  "To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards* v. *Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (citation omitted).[6]  A plaintiff must also identify the provisions of the contract that were breached.  *LMEG Wireless, LLC* v. *Farro*, 140 N.Y.S.3d 593, 596 (2d Dep't 2021).

According to Plaintiffs, "Defendants[,] by only covering a small fraction of the costs of D's treatments[,] have breached their respective agreements." (SAC ¶ 34).  Per the Plan documents, the amounts that GHI reimburses for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York." (*Id.* at ¶ 23).  By implication, according to Plaintiffs, the GHI Defendants' failure to provide reasonable reimbursement was the result of a concerted effort on the part of GHI and the City Defendants to shortchange Plaintiffs.  (*Id.*).  As a result, Plaintiffs allege that GHI is in breach of its agreement with H.  (*Id.*).

---

[6]   The Plan contains a choice-of-law clause that states: "This Contract is in all respects governed by the laws of New York State."  (Campos Decl., Ex. B at 36).  "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Backus* v. *U3 Advisors, Inc.*, No. 16 Civ. 8990 (GHW), 2017 WL 3600430, at *6 (S.D.N.Y. Aug. 18, 2017) (quoting *Hartford Fire Ins. Co.* v. *Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) (internal quotation marks omitted)).  Here, all Defendants either are New York corporations or are headquartered in New York, "H" and "D" are Members of the Plan, and "H" is a New York City employee.  What is more, both parties have cited to New York law in their briefing.  *See Krumme* v. *Westpoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2020) (explaining that the parties' "implied consent … is sufficient to establish choice of law").  Accordingly, the Court applies New York law.

Plaintiffs' allegations in the SAC, however, are inadequate to state a claim for breach of contract.  Plaintiffs do not allege that any specific contractual provision was purportedly breached, let alone how or why it was breached.  As the GHI Defendants observe, the SAC "can be searched in vain for any allegation that a particular provision in the [Plan] has been breached, including why the amounts paid by the GHI Defendants breached the [Plan's] terms."  (GHI Br. 11).  Accordingly, Plaintiffs' breach of contract claim must be dismissed for failure to state a claim.  *See Gianelli* v. *RE/MAX of New York, Inc.*, 41 N.Y.S.3d 273, 274 (2d Dep't 2016) ("A breach of contract cause of action fails as a matter of law in the absence of any showing that a specific provision of the contract was breached.").

*Second*, as to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, it is true that New York recognizes a covenant of good faith and fair dealing that inheres in all contracts.  *Phoenix Cos., Inc.* v. *Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 587 (S.D.N.Y. 2021) (citing *511 W. 232nd Owners Corp.* v. *Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002)).  "This covenant embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *Id.* (citing *511 W. 232nd Owners Corp.*, 98 N.Y.2d at 153 (internal citations omitted)).  To state a claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs must establish that (i) Defendants owed Plaintiffs a duty to act in good faith and conduct fair dealing; (ii) Defendants breached that duty; and (iii) the breach of duty

18

proximately caused Plaintiffs' damages.  *Id.* (citing *Washington* v. *Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009)).

Critically, "[a] party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim." *Phoenix Cos., Inc.*, 554 F. Supp. 3d at 587 (citing *Deutsche Bank Sec., Inc.* v. *Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008)).  Here, Plaintiffs' claim for breach of the implied covenant is, word for word, identical to Plaintiffs' breach of contract claim.  It reads, in its entirety, "The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.  Defendants by only covering a small fraction of the costs of D's treatments have breached the covenant of good faith and fair dealing implied by their respective agreements."  (SAC ¶¶ 38-39).[7]  Plaintiffs' breach of contract and breach of implied covenant claims are predicated on the same allegations that Defendants covered only a small fraction of the cost of D's treatments.  Accordingly, the Court dismisses the implied covenant claim as duplicative of Plaintiffs' breach of contract claim.

*Third*, the Court addresses Plaintiffs' promissory estoppel claim.  "[T]o state a claim for promissory estoppel under New York law, Plaintiff must allege: '[i] a sufficiently clear and unambiguous promise; [ii] reasonable reliance on the

---

[7]     There is another flaw in the numbering of paragraphs in the SAC.  On page 7, paragraph 34 is followed by paragraphs 38 and 39.  Paragraphs 38 and 39 then repeat, and the numbering continues from there until the flaw on page 8 of the SAC, as discussed in note 2.  This citation refers to the first set of paragraphs numbered 38 and 39 on page 7 of the SAC.

promise; and [iii] injury caused by the reliance[.]'" *Barker* v. *Bancorp, Inc.*, No. 21 Civ. 869 (KPF), 2022 WL 595954, at *14 (S.D.N.Y. Feb. 25, 2022); *accord Castellotti* v. *Free*, 27 N.Y.S.3d 507, 513 (1st Dep't 2016).  "Promissory estoppel is a legal fiction designed to substitute for contractual consideration where one party relied on another's promise without having entered into an enforceable contract." *Bader* v. *Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 414 (S.D.N.Y. 2011).  "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel; the alleged promise must be clear and unambiguous." *Barker*, 2022 WL 595954, at *14 (internal citations omitted).

Promissory estoppel is a quasi-contract claim, and the law is clear that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Barker*, 2022 WL 595954, at *11 (quoting *Beth Israel Med. Ctr.* v. *Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (internal citations omitted)).  "A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." *Id.* (quoting *Beth Israel Med. Ctr.*, 448 F.3d at 587).  "Briefly stated, a quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved." *Id.* (quoting *Beth Israel Med. Ctr.*, 448 F.3d at 587).  Only where "a bona fide dispute exists as to the existence of the contract,

20

the plaintiff may proceed on both breach of contract and quasi-contract theories." *Beth Israel Med. Ctr.*, 448 F.3d at 587 (citing *Nakamura* v. *Fujii*, 677 N.Y.S.2d 113, 116 (1st Dep't 1998)).

Plaintiffs allege that (i) Defendants, through their respective agreements, promised to cover the costs of services covered by the Plan; (ii) Plaintiffs relied on Defendants' promises and did not seek alternative employment or insurance coverage; and (iii) Defendants did not honor their promises to cover the costs of D's treatments in a meaningful way. (SAC ¶¶ 39-41).[8] The Court observes first that Plaintiffs' promissory estoppel claim is precluded by the existence of the Plan, an enforceable contract between the Members and the GHI Defendants that governs the subject matter of Plaintiffs' claim — a fact Plaintiffs seem to acknowledge by referring to the Defendants' "respective agreements." Moreover, even if no written agreement existed between the GHI Defendants and the Members, Plaintiffs fail to allege that the GHI Defendants made *any* promise to them concerning the amounts the Plan would pay for services rendered by Brainbuilders, let alone a clear and unambiguous promise upon which Plaintiffs allegedly relied. Although Plaintiffs conclusorily allege that "Defendants, through their respective agreements, promised to cover the costs of the services covered by the Plan" (SAC ¶ 39),[9] Plaintiffs allege no facts concerning this promise, such as when it was allegedly made; to whom it was allegedly made; which provision in the Plan allegedly constituted a promise; or

---

[8]   This citation refers to the second paragraph 39 appearing on page 7 of the SAC.

[9]   This citation refers to the second paragraph 39 appearing on page 7 of the SAC.

the amount the GHI Defendants allegedly promised to pay.  "A complaint does not suffice 'if it tenders "naked assertion[s]" devoid of "further factual enhancement.""  *Cambridge Cap. LLC* v. *Ruby Has LLC*, 565 F. Supp. 3d 420, 458 (S.D.N.Y. 2021) (dismissing promissory estoppel claim where the complaint alleged that the defendant promised it would act in good faith to consummate an investment transaction, but alleged no facts as to what the defendant promised about moving forward in good faith) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, the Court dismisses Plaintiffs' promissory estoppel claim.

### 3.   Plaintiffs' Tort Claims Against the GHI Defendants Fail to State a Claim

The Court next considers Plaintiffs' three tort claims against the GHI Defendants, for fraud, civil conspiracy, and civil aiding and abetting.  (SAC 7-8).  To state a claim for fraud under New York law, a plaintiff must allege (i) a misrepresentation or omission of material fact; (ii) which the defendant knew to be false; (iii) which the defendant made with the intention of inducing reliance; (iv) upon which the plaintiff reasonably relied; and (v) which caused injury to the plaintiff.  *Cambridge Cap. LLC*, 565 F. Supp. 3d at 461.  Claims for fraud must also satisfy the heightened pleading requirements of Rule 9(b) and be pleaded "with particularity."  Fed. R. Civ. P. 9(b); *see also B & M Linen, Corp.* v. *Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010).  Under Rule 9(b), a plaintiff alleging that a defendant made false statements must "[i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made,

22

and [iv] explain why the statements were fraudulent." *Cambridge Cap. LLC*, 565 F. Supp. 3d at 461 (quoting *Novak* v. *Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (internal citation omitted)).  Particularity "means the who, what, where, when and how: the first paragraph of any newspaper story." *Id.* (quoting *Antigenics Inc.* v. *U.S. Bancorp Piper Jaffray, Inc.*, No. 03 Civ. 0971 (RCC), 2004 WL 51224, at *3 (S.D.N.Y. Jan. 9, 2004) (internal citation omitted)).  Rule 9(b) also requires that "the pleading 'explain why the statements were fraudulent.'" *Id.* at 463 (quoting *Rombach* v. *Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (internal citation omitted)).  "[P]laintiffs must do more than say that the statements ... were false and misleading; they must demonstrate with specificity why and how that is so." *Id.* (quoting *Rombach*, 355 F.3d at 174); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 392 (S.D.N.Y. 2006) ("Under the pleading requirements, a complaint must explain, with adequate specificity, why the alleged false or misleading statements were actually false or misleading when made.").

Plaintiffs' fraud claim reads, in its entirety, "The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein. Defendants, through their respective agreements, misrepresented that they will cover and protect against the costs of healthcare.  Defendants, contrary to their representations, did not intend to truly cover the costs of D's treatments." (SAC ¶¶ 42-44).  These bare allegations plainly do not meet the pleading requirements of Rule 9(b).

23

Further, Plaintiffs' fraud claim is duplicative of its breach of contract claim. "It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." *Sussman Sales Co., Inc.* v. *VWR Int'l, LLC*, No. 20 Civ. 2869 (KPF), 2021 WL 1165077, at *11 (S.D.N.Y. Mar. 26, 2021) (quoting *EQT Infrastructure Ltd.* v. *Smith*, 861 F. Supp. 2d 220, 233 (S.D.N.Y. 2012) (citation omitted)), *on reconsideration in part*, No. 20 Civ. 2869 (KPF), 2021 WL 6065760 (S.D.N.Y. Dec. 21, 2021). To maintain a separate claim for fraud, a plaintiff must (i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) point to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (iii) seek special damages that are unrecoverable as contract damages. *Id.* (citing *Merrill Lynch & Co.* v. *Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007)). In determining whether a fraud claim is duplicative of a contract claim, New York courts distinguish between "a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." *Id.* (quoting *Allegheny Energy, Inc.*, 500 F.3d at 184). Given Plaintiffs' failure to identify either a specific contractual provision that was breached or a specific misrepresentation giving rise to fraud, the Court can discern no daylight between Plaintiffs' breach of contract and fraud claims. For this reason, and for Plaintiffs' aforementioned failure to meet the heightened pleading

24

requirements of Rule 9(b), their fraud claim against the GHI Defendants must be dismissed.

The Court next addresses Plaintiffs' claims for civil conspiracy and civil aiding and abetting.  Plaintiffs' civil conspiracy claim reads, in its entirety, "The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.  Defendants have conspired and agreed between themselves to deny substantial coverage for D's treatments, which Plaintiffs were entitled to, and together committed the actions alleged herein."  (SAC ¶¶ 45-46).  Plaintiffs' civil aiding and abetting claim adds, "Each Defendant aided the other Defendants in the breach of their duties."  (*Id.* at 8, ¶ 39).

"New York does not recognize civil conspiracy to commit a tort as an independent cause of action, and a cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort."  *ExpertConnect, L.L.C.* v. *Fowler*, No. 18 Civ. 4828 (LGS), 2019 WL 3004161, at *8 (S.D.N.Y. July 10, 2019) (quoting *Williams* v. *Williams*, 53 N.Y.S.3d 152, 153 (2d Dep't 2017), *leave to appeal denied*, 30 N.Y.3d 913 (2018)).  "To state a claim for civil conspiracy, 'the plaintiff must allege a [i] cognizable tort, coupled with [ii] an agreement between the conspirators regarding the tort, and [iii] an overt action in furtherance of the agreement.'"  *Id.* (quoting *Faulkner* v. *Yonkers*, 963 N.Y.S.2d 340, 341 (2d Dep't 2013) (internal citation omitted)).  Further, to state a claim for aiding and abetting fraud under New York law, "plaintiffs must adequately allege: [i] the existence of a fraudulent scheme; [ii] that the defendant had actual knowledge of the fraud; and [iii] that the defendant

provided substantial assistance to advance the fraudulent scheme." *Heinert* v. *Bank of Am. N.A.*, 835 F. App'x 627, 630 (2d Cir. 2020) (summary order) (internal citation omitted).  Accordingly, Plaintiffs' civil conspiracy and aiding and abetting claims both depend on the survival of the SAC's fraud claim.  As that claim fails, so too do Plaintiffs' claims for civil conspiracy and civil aiding and abetting.

### 4.  Plaintiffs' Statutory Claims Against the GHI Defendants Fail to State a Claim

In addition to the above-described contract and tort claims, H and D raise a series of New York state law claims against the GHI Defendants, namely for violations of (i) New York's Prompt Pay Law, N.Y. Ins. Law § 3224-a(a); (ii) New York's Consumer Protection Law, N.Y. Gen. Bus. Law § 349(a); and (iii) New York Insurance Law § 3221(l)(17)(A), which Plaintiffs refer to as the "New York Autism Mandate" (the "Autism Mandate").  (SAC 8-9, ¶¶ 40-48).  Finally, Plaintiffs allege violations of the federal Mental Health Parity and Addiction Equity Act (the "MHPAEA").  (SAC ¶¶ 49-51).  For the reasons stated below, the Court dismisses each of these claims for failure to state a claim.

*First*, Plaintiffs allege that GHI failed to comply with New York's Prompt Pay Law.  (SAC 9, ¶ 42).  That statute requires insurers to pay claims to policyholders or health care providers "within thirty days of receipt of a claim or bill for services rendered that is transmitted via the internet or electronic mail, or forty-five days of receipt of a claim or bill for services rendered that is submitted by other means, such as paper or facsimile."  N.Y. Ins. Law § 3224-

26

a(a).  Where the insurer's obligation to pay the claim is "not reasonably clear due to a good faith dispute regarding … the benefits covered under a contract or agreement," the insurer must pay the undisputed portion of the claim in accordance with subsection (a), and must also notify the policyholder or health care provider, in writing, (i) whether the claim has been denied or partially approved; (ii) which claim it is not obligated to pay, stating the specific reasons why it is not liable; (iii) all additional information needed to determine liability; and (iv) the specific type of plan or product in which the policyholder is enrolled.  *Id.* § 3224-a(b).  While Plaintiffs allege that GHI has "ignor[ed]" many of Plaintiffs' appeals (SAC ¶ 29), the SAC does not allege that the GHI Defendants failed to respond to a single identifiable claim within the prescribed time period or that they failed to provide timely written notice of their adjudication of any such claim.  (*See* GHI Br. 19).  Accordingly, this claim must be dismissed for failure to state a claim.

*Second*, Plaintiffs allege that the GHI Defendants engaged in actions violating New York's Consumer Protection Law, which protects consumers against "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  (SAC 9, ¶¶ 44-45).  N.Y. Gen. Bus. Law § 349(a).  Plaintiffs' claim reads, in its entirety, "Defendants have engaged in actions that violated the foregoing provision."  (SAC ¶ 45).  Plaintiffs do not allege with specificity a single action taken by Defendants that constitutes a violation of New York's Consumer Protection Law, nor do they

27

explain why any of Defendants' conduct is violative of that provision.

Accordingly, the Court dismisses Plaintiffs claim for failure to state a claim.

*Third*, Plaintiffs allege that the GHI Defendants have violated the Autism

Mandate.  (SAC 9, ¶¶ 46-48).  New York Insurance Law § 3221 provides:

> Every group or blanket accident and health insurance policy delivered or issued for delivery in this state which provides coverage for hospital or surgical care coverage shall not exclude coverage for screening, diagnosis and treatment of medical conditions otherwise covered by the policy because the treatment is provided to diagnose or treat autism spectrum disorder.

N.Y. Ins. Law § 3221(l)(17)(A).  The GHI Defendants argue in the first instance

that the Autism Mandate does not provide a private right of action.  (GHI

Br. 22-23), and so the Court begins with that analysis.

"In New York, the essential factors governing whether an implied private

right of action exists are: '[i] whether the plaintiff is one of the class for whose

particular benefit the statute was enacted; [ii] whether recognition of a private

right of action would promote the legislative purpose; and [iii] whether creation

of such a right would be consistent with the legislative scheme.'" *Bushell* v.

*UnitedHealth Grp. Inc.*, No. 17 Civ. 2021 (JPO), 2018 WL 1578167, at *2

(S.D.N.Y. Mar. 27, 2018) (quoting *Sheehy* v. *Big Flats Cmty. Day, Inc.*, 73

N.Y.2d 629, 633 (1989)).  "The third factor is the most critical."  *Id.* (citing

*Carrier* v. *Salvation Army*, 88 N.Y.2d 298, 302 (1996)).  Since the New York

Insurance Law gives the New York Superintendent of Insurance "broad

regulatory powers over the health plans at issue," courts have consistently

concluded that "[the] recognition of a private right of action in favor of the

patients would not advance the legislative purpose and would be inconsistent with the legislative scheme." *Hudes* v. *Vytra Health Plans Long Island Inc.*, 744 N.Y.S.2d 80, 82 (3d Dep't 2002).  More specifically, courts have repeatedly found that Section 3221 does not imply a private right of action.  *See, e.g., Doe* v. *United Health Grp. Inc.*, No. 17 Civ. 4160 (AMD) (RL), 2018 WL 3998022, at *6-7 (E.D.N.Y. Aug. 20, 2018) (finding no implied private right of action under Section 3221(1)(5)(A)); *Bushell*, 2018 WL 1578167, at *3 (same); *Hudes*, 744 N.Y.S.2d at 82 (finding no implied private right of action for chiropractors and patients under Section 3221(k)(11)).

Plaintiffs respond that whether or not the law provides a private right of action, the Plan's claim that it is in compliance with the New York Insurance Law effectively incorporates the Autism Mandate into the Plan.  (Pl. Opp. 24). In support, Plaintiffs point to the provision in the Plan's Certificate of Coverage that reads, "The insurance evidenced by this Certificate meets the minimum standards for basic medical insurance as defined by the New York State Insurance Department."  (Pollak Decl., Ex. A at 2).  The GHI Defendants reply that even if it is true that the Plan incorporates the Autism Mandate, Plaintiffs have nonetheless failed to allege that the GHI Defendants have "exclude[d] coverage" as required to plead a violation of New York Insurance Law § 3221(l)(17)(A).  (GHI Reply 10).  Instead, the SAC merely alleges that "[t]he State of New York mandates that all health insurance policies cover autism services, including ABA[.]  The Plan claims to comply with the Mandate, but its actual reimbursements belie such claim."  (SAC ¶¶ 47-48).  Notably, Plaintiffs

do not allege that the GHI Defendants have "exclude[d] coverage ... because the treatment is provided to diagnose or treat autism spectrum disorder." *See* N.Y. Ins. Law § 3221(l)(17)(A). Instead, Plaintiffs merely argue that, in their opinion, the reimbursement rate for autism treatment is too low. These musings, however, fail to state a claim.

*Fourth*, Plaintiffs allege that the GHI Defendants have violated the federal MHPAEA, which requires group health plans and health insurance issuers to ensure that the financial requirements (deductibles, copays, etc.) and treatment limitations applied to mental health benefits be no more restrictive than the predominant financial requirements and treatment limitations applied to substantially all medical and surgical benefits covered by the plan or insurance. (SAC ¶¶ 49-51). *See N.Y.S. Psychiatric Ass'n, Inc.* v. *UnitedHealth Grp.*, 798 F.3d 125, 128 (2d Cir. 2015) (describing the requirements of the MHPAEA). Plaintiffs allege that the GHI Defendants have violated the MHPAEA by failing to make available the reasons for their reimbursement determinations (*id.* at ¶ 27 (citing 29 C.F.R. § 2590.712(d))), and by "not covering autism services, a mental health condition, on par with medical and surgical services" (*id.* at ¶ 51 (citing 29 U.S.C. § 1185a)).

As the GHI Defendants point out in their brief (GHI Br. 23), there is no private right of action under the MHPAEA, although portions of it are incorporated into ERISA and may be enforced using the civil enforcement provisions of ERISA contained at 29 U.S.C. § 1132. *See generally Gallagher* v. *Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 258 (S.D.N.Y.

2018); *Munnelly* v. *Fordham Univ. Fac.*, 316 F. Supp. 3d 714, 728 (S.D.N.Y. 2018).  Indeed, both of the provisions Plaintiffs cite in support of these allegations — 29 C.F.R. § 2590.712(d) and 29 U.S.C. § 1185a — are ERISA regulations.  Significantly, as Plaintiffs concede, the Plan is not an ERISA plan. (SAC ¶ 27 (describing the Plan as a "grandfathered non-ERISA healthcare plan")).  As a governmental plan, the Plan is exempt from ERISA's regulatory reach.  *See* 29 U.S.C. § 1002(32) (defining "governmental plan" to include "a plan established or maintained for its employees by … the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing"); *id.* § 1003(b)(1) (exempting governmental plans from ERISA).

Similar to their Autism Mandate arguments, Plaintiffs respond that regardless of whether the MHPAEA provides a private right of action, the GHI Defendants are still contractually obligated to fulfill the MHPAEA's provisions. (Pl. Opp. 25).  Just as before, however, Plaintiffs have failed to identify a single provision of the Plan demonstrating that its financial requirements or treatment limitations are any more restrictive for mental health conditions than they are for any other health condition.  Accordingly, this claim, too, must be dismissed for failure to state a claim.

## C.   The Court Dismisses Plaintiffs' Claims Against the City Defendants

### 1.   OLR Is Not a Suable Entity

Turning now to the City Defendants' motion, the Court begins with their argument that Plaintiffs' claims against OLR must be dismissed because a City

agency is not an entity that can be sued.  (City Br. 4).  Plaintiffs retort that the City Charter only exempts OLR from penalties sounding in tort, not contract, and that the City Charter "acknowledges the fundamental suability of OLR." (Pl. Opp. 26-27).  The Court disagrees.

The Charter is clear that OLR is a non-suable entity.  *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Shapiro* v. *Adam*, No. 22 Civ. 2603 (KPF), 2022 WL 1063155, at *1 (S.D.N.Y. Apr. 5, 2022) (dismissing plaintiff's claims against City agencies, including OLR); *see also Emerson* v. *City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").  Accordingly, Plaintiffs' claims against OLR are dismissed.

### 2.      Plaintiffs' Claims Against DOE Are Procedurally Barred

In contrast to OLR, DOE is a suable entity because "the City of New York and the Department of Education are separate legal entities."  *A.V. by H.V.* v. *N.Y.C. Dep't of Educ.*, 74 Misc. 3d 1220(A), 162 N.Y.S.3d 692 (N.Y. Sup. Ct. 2022) (citing N.Y. Educ. Law § 2551); *see also Tanaysha T.* v. *City of New York*, 12 N.Y.S.3d 908, 909 (2d Dep't 2015) (observing that the City was not a proper party to an action seeking damages for the alleged negligence of DOE, "an entity from which it is separate and distinct"); *Matson* v. *Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 78 n.8 (2d Cir. 2011) ("[I]ts name as the New York City Department of Education notwithstanding, the DOE does not appear

to be a city department within the contemplation of the City Charter."). In 2002, the New York Education Law was amended to provide for greater mayoral control of education matters in New York City, and a concomitant limit on the power of the Board of Education ("BOE"). *See Perez ex rel. Torres* v. *City of New York*, 837 N.Y.S.2d 571, 572 (1st Dep't 2007), *leave to appeal denied*, 10 N.Y.3d 708 (2008).[10] Even after that amendment, the City and the Board remain separate legal entities. *Id.* (citing *Gonzalez* v. *Esparza*, No. 02 Civ. 4175 (SWK), 2003 WL 21834970, at *2 (S.D.N.Y. Aug. 6, 2003) ("[C]hanges in the statutory scheme regarding the interplay between the Board [of Education] and the City can be best described as 'political,' with the Board continuing to exist as a separate and distinct legal entity from the City.")).

Section 3813 of the New York Education Law requires the filing of a notice of claim prior to the commencement of an action against DOE or any of its officers. *See* N.Y. Educ. Law § 3813(1). Specifically, under New York law, a plaintiff must file a notice of claim within ninety days after the claim arises, plead that it has been served, allow thirty days to elapse after the notice is filed before filing a complaint, and demonstrate that in that time, the defendant either neglected or refused to satisfy the claim. *Smith* v. *N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011) (citing N.Y. Educ. Law § 3813(1); N.Y. Gen. Mun. Law § 50-e). "[T]he filing of a notice of claim within three

---

[10]   While the Board of Education ("BOE"), an entity created by New York State law, and DOE, an entity created in 2002 by the BOE, are not synonymous, *see Matson* v. *Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 77 (2d Cir. 2011) (Straub, J., dissenting in part and concurring in part), the differences between them are not relevant here.

months after the accrual of a claim [is] an absolute condition precedent to the filing of a lawsuit." *Fierro* v. *City of New York*, No. 20 Civ. 9966 (GHW), 2022 WL 428264, at *11 (S.D.N.Y. Feb. 10, 2022) (citing *Santiago* v. *Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006)).

"[F]ailure to present a claim within the statutory time limitation or to notify the correct party is a fatal defect[.]" *Jovasevic* v. *Mount Vernon City Sch. Dist.*, 127 N.Y.S.3d 872, 873 (2d Dep't 2020) (citing *Parochial Bus Sys., Inc.* v. *Bd. of Educ. of City of N.Y.*, 60 N.Y.2d 539, 547 (1983)), *leave to appeal denied*, 36 N.Y.3d 906 (2021). Although the New York Court of Appeals "has held that, where the school district has been sufficiently informed of the claim, all that is required is substantial compliance with the statute regarding the degree of descriptive detail in a notice of claim," it has "nevertheless, always insisted that statutory requirements mandating notification to the proper public body or official must be fulfilled." *Id.* (citing *Parochial Bus Sys., Inc.*, 60 N.Y.2d at 547). Of note, "[t]he statutory prerequisite is not satisfied by presentment to any other individual or body, and, moreover, the statute permits no exception regardless of whether the Board had actual knowledge of the claim or failed to demonstrate actual prejudice." *Id.* (citing *Parochial Bus Sys., Inc.*, 60 N.Y.2d at 548). Where a plaintiff fails to comply with Section 3813's notice of claim requirement, the plaintiff's claims must be dismissed. *See, e.g., Jovasevic*, 127 N.Y.S.3d at 873 (affirming dismissal for failure to comply with Section 3813's notice of claim requirement); *Capstone Enters. of Port Chester, Inc.* v. *Valhalla Union Free Sch. Dist.*, 809 N.Y.S.2d 917, 918 (2d Dep't 2006) (same); *see also*

34

*Hardy* v. *N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999)

("Failure to comply with these requirements ordinarily requires a dismissal for

failure to state a cause of action.").

Plaintiff H's notice of claim was filed by counsel and presented to the New

York City Comptroller on June 19, 2020.  (*See* Bridge Decl., Ex. B).  When

asked, "What agency/employer are you making this claim against?," H

responded, "OFFICE MUNICIPAL LABOR RELATIONS."  (*Id.*).  The City

Defendants argue that this notice did not sufficiently inform DOE of Plaintiffs'

claims, and that Plaintiffs' claims against DOE must therefore be dismissed.

(City Br. 5).  Plaintiffs respond that the 2002 amendments to the Education

Law rendered DOE a subagency of the City, under the direct control of the

Mayor.  (Pl. Opp. 27-28).  From this, Plaintiffs reason, the City is DOE's

"governing body," and it is sufficient that they served notice on the City's

Comptroller.  (*Id.* at 27).

The Court disagrees with Plaintiffs' contention that providing notice to

the City Comptroller effectively equates to providing notice to DOE.  As stated

above, despite amendments made to the Education Law in 2002, the City and

DOE remain separate legal entities.  *See Perez*, 837 N.Y.S.2d at 572.[11]

Further, as stated above, Plaintiffs' failure to notify the correct party is "a fatal

---

[11]     Indeed, if Plaintiffs were correct that the 2002 amendments to the Education Law
         transformed DOE into a subagency of the City, DOE would no longer be a suable entity.
         *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of
         penalties for the violation of any law shall be brought in the name of the city of New
         York and not in that of any agency, except where otherwise provided by law.").

defect." *Jovasevic*, 127 N.Y.S.3d at 873 (affirming denial of petition for reinstatement and back pay where petitioner presented his purported notice of claim to the School District's Superintendent rather than the BOE, even though the BOE ultimately obtained actual knowledge of the letter from the Superintendent's office).  In light of the foregoing, Plaintiffs' claims against DOE must be dismissed.[12]

### 3.  Plaintiffs' Tort Claims Against the City Are Procedurally Barred and Fail to State a Claim

Next, the City Defendants argue that Plaintiffs' tort claims against the City — for fraud, civil conspiracy, and aiding and abetting — are untimely under New York General Municipal Law § 50-e(1)(a).  (City Br. 7).  This section provides, in pertinent part, that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation ... the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises[.]"  N.Y. Gen. Bus. Law § 50-e(1)(a).  While Plaintiffs did file a notice of claim with the City on June 19, 2020, the City Defendants argue that Plaintiffs' tort claims in fact accrued two years earlier, in May 2018, when (i) H allegedly relied on the City's purported misrepresentations that the Plan would sufficiently cover Brainbuilders's

---

12  As Plaintiffs' claims against DOE are dismissed for failure to provide a notice of claim in accordance with New York Education Law § 3813, the Court need not consider whether these claims were also untimely under this same section, which requires a verified claim to be presented to the BOE within three months of the accrual of any such claim.  (*See* City Br. 8).

services and (ii) GHI denied H's payment appeal.  (City Br. 7-8 (citing Bridge Decl., Ex. C)).  Plaintiffs counter that the alleged tortious conduct was "continuing and ongoing," and thus fell within the statute of limitations.  (Pl. Opp. 28-29).  Alternatively, the City Defendants argue that Plaintiffs' claims for fraud, civil conspiracy, and civil aiding and abetting fail to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b) discussed earlier. (City Br. 13).  Unsurprisingly, Plaintiffs disagree.  (Pl. Opp. 19-20, 33).

A claim for fraud accrues when "the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint." *Meimaris* v. *Royce*, No. 19-3339-cv, 2021 WL 5170725, at *3 (2d Cir. Nov. 8, 2021).  Stated differently, a fraud claim accrues "when a plaintiff takes detrimental action in reliance on a fraudulent statement, and not at the time the statement is made[.]"  *Ramiro Aviles* v. *S & P Glob., Inc.*, 380 F. Supp. 3d 221, 275 (S.D.N.Y. 2019).  However, "New York's continuing tort doctrine tolls the statute of limitations based on 'wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit.'"  *Abdulaziz* v. *McKinsey & Co., Inc.*, No. 21 Civ. 1219 (LGS), 2021 WL 4340405, at *3 (S.D.N.Y. Sept. 22, 2021) (quoting *Estreicher* v. *Oner*, 49 N.Y.S.3d 530, 532 (2d Dep't 2017) (internal citation omitted)), *aff'd*, No. 21-2921, 2022 WL 2444925 (2d Cir. July 5, 2022).

"The continuing tort doctrine applies only where the 'final actionable event' of the allegedly harmful course of conduct falls within the statute of limitations."  *Abdulaziz*, 2021 WL 4340405, at *3 (quoting *Estreicher*, 49

37

N.Y.S.3d at 532). "New York courts treat the 'final actionable event' as the last tortious act by the tortfeasor, not the last injury sustained by the victim." *Id.* (citing *Mintz & Gold, LLP* v. *Zimmerman*, 898 N.Y.S.2d 116, 117 (1st Dep't 2010) (holding that the plaintiff's claim was timely under the continuing tort doctrine because the defendant acted within the limitations period); *Shannon* v. *MTA Metro-N. R.R.*, 704 N.Y.S.2d 208, 209 (1st Dep't 2000) (same)). "As a general matter, the continuing [tort] doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Kubicek* v. *Westchester Cnty.*, No. 08 Civ. 372 (KMK), 2009 WL 3720155, at *6 (S.D.N.Y. Oct. 8, 2009) (quoting *Trinidad* v. *N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)); *see also Bernstein* v. *Mony Grp., Inc.*, 228 F. Supp. 2d 415, 418 (S.D.N.Y. 2002) ("As a general rule, courts in the Second Circuit have viewed continuing [tort] arguments with disfavor.").

The Court agrees with the City Defendants that Plaintiffs' tort claims are untimely. Plaintiffs allege that they took detrimental action in reliance on the City Defendants' allegedly fraudulent statements by not seeking alternative employment or additional insurance coverage, and that Plaintiffs' fraud claim accrued when H detrimentally relied on the City Defendants' purported misrepresentations that they would cover the cost of healthcare. (*See* SAC ¶¶ 40, 43). While Plaintiffs do not specify a date on which this detrimental reliance occurred, a generous interpretation of the allegations in the SAC indicates that this occurred in May 2018, when the GHI Defendants denied H's appeal. (*See* Dkt. #36-4). Accordingly, Plaintiffs needed to file their notice of

claim with the City by August 2018, approximately 22 months prior to the date Plaintiffs actually filed their notice of claim.

Moreover, even if Plaintiffs' tort claims against the City were timely, which they were not, they would be dismissed for failure to state a claim, for the same reasons the Court dismissed Plaintiffs' tort claims against the GHI Defendants.  *First*, Plaintiffs' sparse and conclusory allegations of fraud plainly do not meet the pleading requirements of Rule 9(b).  *Second*, Plaintiffs' civil conspiracy and aiding and abetting claims depend on the survival of the SAC's fraud claim.  *See ExpertConnect, L.L.C.*, 2019 WL 3004161, at *8 ("[A] cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort."); *Heinert*, 835 F. App'x at 630 ("To state a claim for aiding and abetting fraud under New York law, plaintiffs must adequately allege … the existence of a fraudulent scheme[.]").  However, as that claim fails, so too do Plaintiffs' claims for civil conspiracy and civil aiding and abetting.  Accordingly, all of Plaintiffs' tort claims against the City Defendants must be dismissed.

### 4. Plaintiffs' Contract Claims Against the City Fail to State a Claim

Plaintiffs allege claims against the City for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. Here, as with the same claims against the GHI Defendants, each claim must be dismissed for failure to state a claim.

*First*, the Court dismisses Plaintiffs' claim against the City for breach of contract, for largely the same reasons it dismissed their analogous claim

against the GHI Defendants.  To review, Plaintiffs allege that, per the Plan

documents, the amounts that GHI reimbursed for the Plan's covered services

"are based upon data collected by GHI and agreed to by the City of New York."

(SAC ¶ 23).  By implication, according to Plaintiffs, the GHI Defendants' failure

to provide reasonable reimbursement was the result of a concerted effort on the

part of GHI and the City Defendants to shortchange Plaintiffs.  (*Id.*).  As a

result, Plaintiffs allege, the City Defendants are in breach of their commitment

to their employee and are complicit in GHI's breach.  (*Id.*).  Here, as before,

Plaintiffs' allegations are inadequate to state a claim for breach of contract.

While Plaintiffs allege the existence of an employment contract between DOE

and its employee, H, they can point to no agreement between themselves and

the City.  The allegation that "Plan documents" state that reimbursement

amounts "'are based upon data collected by GHI and agreed to by the City"

(*id.*), does not constitute an agreement between Plaintiffs and the City.

Plaintiffs, therefore, have failed to plead the first element of their breach of

contract claim.

*Second*, Plaintiffs' claim against the City for breach of the implied

covenant of good faith and fair dealing must also be dismissed.  As stated

above, under New York law, a covenant of good faith and fair dealing inheres in

all contracts.  *Phoenix Cos., Inc.*, 554 F. Supp. 3d at 587 (citing *511 W. 232nd*

*Owners Corp.*, 98 N.Y.2d at 153).  "Where there is no agreement, however,

there can be no implied duty to act."  *Bibicheff* v. *PayPal, Inc.*, No. 17 Civ. 4679

(DRH) (AYS), 2020 WL 2113373, at *5 (E.D.N.Y. May 4, 2020) (internal citations

omitted), *aff'd*, 844 F. App'x 394 (2d Cir. 2021) (summary order); *accord Banco Espirito Santo de Investimento, S.A.* v. *Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *5 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004) (summary order).

*Third* and finally, the Court addresses Plaintiffs' promissory estoppel claim. As stated above, "to state a claim for promissory estoppel under New York law, Plaintiff must allege: '[i] a sufficiently clear and unambiguous promise; [ii] reasonable reliance on the promise; and [iii] injury caused by the reliance[.]'" *Barker*, 2022 WL 595954, at *14. "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel; the alleged promise must be clear and unambiguous." *Id.*

Plaintiffs allege that (i) Defendants, through their respective agreements, promised to cover the costs of services covered by the Plan; (ii) Plaintiffs relied on Defendants' promises and did not seek alternative employment or insurance coverage; and (iii) Defendants did not honor their promises to cover the costs of D's treatments in a meaningful way. (SAC ¶¶ 39-41). As with their promissory estoppel claim against the GHI Defendants, Plaintiffs fail to allege that the City Defendants made any promise to them concerning the amounts the Plan would pay for services rendered by Brainbuilders, let alone a clear and unambiguous promise upon which Plaintiffs allegedly relied. As before, "[a] complaint does not suffice 'if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Cambridge Cap. LLC*, 565 F. Supp. 3d at 458 (quoting *Iqbal*,

556 U.S. at 678).  Accordingly, the Court dismisses Plaintiffs' promissory estoppel claim as to the City Defendants.

## D.    The Court Dismisses Plaintiffs' Claim for Declaratory Relief

Lastly, Plaintiffs seek a declaratory judgment, presumably under the Declaratory Judgment Act, 28 U.S.C. § 2201, that Plaintiffs are entitled to full reimbursement from Defendants for D's ABA treatment going forward.  (SAC ¶ 53).  The Declaratory Judgment Act provides the procedural mechanism for granting declaratory relief in federal diversity cases.  *Obra Pia Ltd.* v. *Seagrape Invs. LLC*, No. 19 Civ. 7840 (RA), 2020 WL 5751195, at *17 (S.D.N.Y. Sept. 25, 2020) (citing *Am. Standard, Inc.* v. *Oakfabco, Inc.*, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007)), *appeal dismissed* (June 17, 2021), *motion for relief from judgment denied*, No. 19 Civ. 7840 (RA), 2021 WL 1978545 (S.D.N.Y. May 18, 2021).  "It does not, however, provide an independent cause of action."  *Id.* (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993)) (internal quotation marks omitted).  Rather, the Act provides "a form of relief previously unavailable," such that "a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief."  *Id.* (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d at 731); *see also Trodale Holdings LLC* v. *Bristol Healthcare Invs., L.P.*, No. 16 Civ. 4254 (KPF), 2017 WL 5905574, at *11 (S.D.N.Y. Nov. 29, 2017) ("Plaintiff cannot sustain an independent cause of action for a declaratory judgment.  A declaratory judgment is a remedy, not a cause of action.").  Where, as here, a plaintiff's substantive claims are dismissed, a standalone claim for a

declaratory judgment is properly dismissed as well.  *See, e.g., Obra Pia Ltd.*, 2020 WL 5751195, at *17 (dismissing cause of action for declaratory judgment because plaintiffs' substantive claims had been dismissed); *Xiaolu Peter Yu* v. *Vassar Coll.*, 97 F. Supp. 3d 448, 484 (S.D.N.Y. 2015) ("Given that Yu has failed to establish his other claims, and the declaratory relief sought rests on those claims, his claim for declaratory judgment also fails."); *KM Enters., Inc.* v. *McDonald*, No. 11 Civ. 5098 (ADS) (ETB), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012) ("As to the only remaining causes of action in the Amended Complaint — namely, the counts for a 'declaratory judgment' and an 'injunction' — the Plaintiff cannot survive a motion to dismiss by relying on these claims as independent causes of action."), *aff'd*, 518 F. App'x 12 (2d Cir. 2013) (summary order).

## E.   The Court Denies Leave to Amend

Lastly, the Court considers whether to grant Plaintiffs leave to file an amended complaint.  Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

While leave to amend is freely granted under Rule 15, it is "within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC* v. *Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).  Leave may be denied where the proposed amendment would be futile. *See Olson* v. *Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020).  Amendment is

43

futile if the "amended portion of the complaint would fail to state a cause of action." *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (finding amendment not futile where amended complaint would be "sufficient to withstand a motion to dismiss"); *Pompey-Primus* v. *Success Acad. Charter Sch., Inc.*, No. 21 Civ. 3981 (KPF), 2022 WL 504541, at *10 (S.D.N.Y. Feb. 17, 2022) (denying leave to amend where plaintiff did not amend her pleading or request leave to do so, and amendment would have been futile). Here, Plaintiffs have already taken advantage of two opportunities to amend their complaint, including after Defendants filed motions to dismiss in the District of New Jersey, raising the very arguments that the Court has found to be dispositive here.  (Dkt. #11, Ex. 5; Dkt. #13, Ex. 5).  Relatedly, Plaintiffs have not identified any amendments that would alter the Court's analysis, and their prior failures to correct the deficiencies in the pleadings suggest that they are unlikely to be able to do so.  Accordingly, the Court finds that amendment would be futile and denies Plaintiffs leave to amend.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and Plaintiffs' claims are dismissed.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:        August 8, 2022
              New York, New York

                                        _____
                                             KATHERINE POLK FAILLA
                                           United States District Judge

45